**COMMONWEALTH of Pennsylvania**

v.

**George D. WALLS, Appellant.**

Superior Court of Pennsylvania.

Submitted June 29, 2009.

Filed April 7, 2010.

William C. Kaczynski, Pittsburgh, for appellant.

Michael W. Streily, Deputy District Attorney, for Commonwealth, appellee.

BEFORE: FORD ELLIOTT, P.J., SHOGAN and POPOVICH, JJ.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 George D. Walls appeals from the order entered July 18, 2008, dismissing his PCRA[1] petition without a hearing. After careful review, we are compelled to vacate in part and remand for further proceedings.

¶ 2 On September 15, 2003, following a jury trial before the Honorable Raymond Novak, appellant was found guilty of one count each of indecent assault and sexual assault. The charges were brought in con-

---

1. Post–Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546.

nection with an incident that occurred on September 9, 2002, when appellant engaged in anal intercourse with the male victim ("the victim"), without his consent. Appellant was found not guilty of one count each of involuntary deviate sexual intercourse ("IDSI") and false imprisonment. Counts 2 and 5 of the information, IDSI (incapable of consent) and indecent assault (incapable of consent), were dismissed on appellant's motion for judgment of acquittal, as the court determined that the victim, despite testimony that he had limited mental capacity, was not incapable of consenting to sexual relations. (Notes of testimony, 9/11–15/03 at 164–165.)

¶ 3 Following trial, new counsel, William Brandstetter, Esq., was appointed to represent appellant. Attorney Brandstetter filed post-trial motions on appellant's behalf; and on June 18, 2004, following an evidentiary hearing before Judge Novak, appellant's motion for a new trial was granted. The trial court found that appellant suffered from a significant auditory impairment which prevented him from hearing all the evidence brought against him. (Notes of testimony, 6/18/04 at 111–112.) The trial court decided that appellant was entitled to a new trial using "real-time" technology, which would enable him to understand the nature of the allegations and effectively assist counsel in his defense. (*Id.* at 110–111.)

¶ 4 The Commonwealth filed an appeal, and on November 3, 2005, a panel of this court reversed and remanded for sentencing, finding that there was no basis for the trial court's conclusion that it had erred in not providing a sign language interpreter *sua sponte*. *Commonwealth v. Walls*, 890 A.2d 1108 (Pa.Super.2005) (unpublished memorandum). The panel determined that appellant's hearing problem was not brought to the trial court's attention, and there was no indication in the record that the trial court was aware, or should have been aware, that appellant was unable to comprehend the nature of the proceedings, hear the testimony of witnesses, or assist in his own defense. *Id.* at 12. "Thus, as in *Wallace*, [2] there was mention of a hearing problem, but neither defense counsel nor [appellant] brought to the trial court's attention the fact that [appellant] was not able to follow the proceedings due to his hearing impairment." *Id.*

> As [appellant] failed to bring his hearing impairment to the trial court's attention, and given that the trial record was devoid of an indication that [appellant] was not able to follow the proceedings because of his hearing impairment, any failure to request an interpreter pursuant to § 8701(b)[3] is due to trial counsel's alleged ineffectiveness. The issue of trial counsel's ineffectiveness is not, however, an issue at this time....

*Id.* (footnote omitted).[4]

¶ 5 On March 15, 2006, the Pennsylvania Supreme Court denied appellant's petition for allowance of appeal. *Commonwealth v. Walls*, 587 Pa. 693, 897 A.2d 457 (2006). Thus, on August 2, 2006, appellant appeared for sentencing before the Honorable Anthony M. Mariani.[5] Following an evidentiary hearing, the trial court determined appellant met the criteria for sexu-

**2.** *Commonwealth v. Wallace*, 433 Pa.Super. 518, 641 A.2d 321 (1994), discussed *infra*.

**3.** 42 Pa.C.S.A. § 8701.

**4.** In a footnote, the panel observed that Judge Novak found trial counsel was ineffective. However, the trial court later acknowledged

that the question of trial counsel ineffectiveness was not ripe for review at that time. *Id.* n. 11.

**5.** We note that appellant used real-time captioning during the sentencing proceedings. (Notes of testimony, 8/2/06 at 2–3.)

ally violent predator ("SVP") status and imposed an aggregate sentence of five to ten years' imprisonment. No direct appeal was filed; however, on November 1, 2006, appellant filed a timely *pro se* PCRA petition. (Docket No. 48.)

¶ 6 Counsel was appointed, and filed an amended petition on appellant's behalf on February 1, 2007. (Docket No. 55.) Subsequently, on June 6, 2007, counsel was granted permission to withdraw, and current counsel, William C. Kaczynski, Esq., was appointed to represent appellant. (Docket No. 60.) Eventually, after several extensions of time, Attorney Kaczynski filed a "supplemental amended PCRA petition" on November 2, 2007. (Docket No. 75.) The Commonwealth filed an answer on May 12, 2008. (Docket No. 86.) On May 15, 2008, the PCRA court issued 20–day notice of its intention to dismiss appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. (Docket No. 87.) Following appellant's response to Rule 907 notice, on July 18, 2008, appellant's PCRA petition was dismissed. This timely appeal followed. Appellant has complied with Pa. R.A.P. 1925(b), and the PCRA court has filed an opinion.

¶ 7 Appellant has raised the following issues for this court's review:

I.    WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO SECURE AN INTERPRETER OR REAL–TIME TRANSCRIPTION WHERE APPELLANT'S HEARING IMPAIRMENT PREVENTED HIM FROM FULLY HEARING AND PARTICIPATING IN HIS DEFENSE.

II.   WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO USE AND SECURE EXCULPATORY EVIDENCE FOR TRIAL OR, ALTERNA-TIVELY, WHETHER EXCULPATORY AFTER–DISCOVERED EVIDENCE WARRANTS A NEW TRIAL.

III.  WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO PROPERLY REBUT EVIDENCE OF SEXUALLY VIOLENT PREDATOR STATUS AND THEN IN FAILING TO APPEAL THE INSUFFICIENCY AND UNRELIABILITY OF THE EVIDENCE RELATING TO SVP STATUS.

IV.   WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO CONSULT AND SECURE A PHYSICIAN TRAUMA SPECIALIST WITH EXPERTISE IN SEXUAL ASSAULT TRAUMA TO REBUT THE PROSECUTION'S EVIDENCE.

V.    WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO REQUEST A PROPER JURY INSTRUCTION AS TO CONSENT AS A DEFENSE.

VI.   WHETHER TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT TO AN UNAUTHORIZED UNILATERAL AMENDMENT OF THE CHARGES.

Appellant's brief at 5.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Halley*, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified

record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super.2001).

*Commonwealth v. Turetsky*, 925 A.2d 876, 879 (Pa.Super.2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007).

[T]he right to an evidentiary hearing on a post-conviction petition is not absolute. *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super.2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. *Id.* It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. *Commonwealth v. Hardcastle*, 549 Pa. 450, 454, 701 A.2d 541, 542–543 (1997).

*Id.* at 882, quoting *Commonwealth v. Khalifah*, 852 A.2d 1238, 1239–1240 (Pa.Super.2004).

¶ 8 Initially, we will summarize the underlying facts of this case, since they are germane to at least some of the issues raised on the instant appeal. The victim testified that at the time of the incident, he was working for a cleaning company at Ross Park Mall. (Notes of testimony, 9/11–15/03 at 24.) Appellant was his supervisor. (*Id.*) The victim testified that they became friends, and at some point, the victim decided to move into appellant's apartment as "things weren't going very well at home with my parents again." (*Id.* at 26–27.)

¶ 9 The victim testified that on the evening of September 9, 2002, he was in appellant's bedroom playing on the computer when appellant came into the room and asked him if he wanted to have sex. (*Id.*

at 27–28.) The victim declined, and appellant grabbed him and threw him onto the bed. (*Id.* at 28.) Appellant took off the victim's clothes. (*Id.* at 28–29.) The victim testified that he told appellant to stop, and tried to push appellant off of him. (*Id.* at 29.) The victim testified that appellant anally penetrated him and bit his neck. (*Id.*) According to the victim, appellant forcibly anally raped him for approximately ten minutes. (*Id.* at 51.) The victim went to the bathroom and discovered that he was bleeding from his rectum. (*Id.* at 29, 48–50.) The victim testified that he was bleeding "quite a bit." (*Id.* at 49.) As the victim went to leave appellant's apartment, appellant pushed him up against the wall and threatened to "f—— [him] again." (*Id.* at 30.) The victim left and eventually called the police from a friend's apartment. (*Id.* at 30.)

¶ 10 The victim went to the emergency room at UPMC Passavant where he was treated by Dr. Richard Wadas, M.D. Dr. Wadas performed a sexual assault examination, and found three marks on the victim's neck. (*Id.* at 104.) Dr. Wadas found no evidence of any bleeding or trauma to the victim's anus or genitals. (*Id.* at 105, 106.) However, Dr. Wadas testified that he would not necessarily find evidence of physical trauma after a sexual assault. (*Id.* at 105.)

¶ 11 David Danner ("Danner"), a forensic scientist, testified that he examined the sexual assault evidence kit submitted for the victim. (*Id.* at 110.) Danner did find seminal material on the victim's shorts, which was stipulated to contain appellant's DNA. (*Id.* at 112–113.) Danner also found an indication of the presence of blood on one of the cotton swabs used during the sexual assault examination; however, he testified that it was too small an amount for further testing. (*Id.* at 110–111.) On cross-examination, Danner conceded that

the test was not conclusive and that "it could or could not be blood." (*Id.* at 115.)

¶ 12 Appellant testified in his own defense. Appellant's defense was not that the sexual act did not occur, but that it was consensual. Appellant testified that the night of September 9, 2002 was not the first time they had anal intercourse. (*Id.* at 174, 183.) According to appellant, the victim was having financial difficulties and needed money for a car. Appellant testified that they reached an agreement whereby the victim would have sex with appellant in exchange for appellant's help in buying a car. (*Id.* at 172.)

¶ 13 Appellant testified that on the night of the incident, the victim never expressed an unwillingness to have sex or attempted to resist appellant's advances. (*Id.* at 180–181.) Afterwards, they were sitting in the dining room eating and getting ready to go to work. (*Id.* at 181.) [6] Appellant testified that the victim became angry and demanded to know when he would get his money for the car. (*Id.* at 182–183.) When the victim told appellant that he only had sex with him for the money, appellant became upset and told the victim to vacate the apartment. (*Id.* at 183–184.) The victim left the keys to appellant's apartment on the table, and they drove to the mall separately. (*Id.* at 184.) The following night, September 10, 2002, appellant was arrested. (*Id.* at 186–187.)

¶ 14 In a statement to police, appellant initially denied any sexual contact with the victim, but then later admitted that they had sex, but that it was consensual. (*Id.* at 152–153.) Appellant stated that he loved the victim. (*Id.*) It was stipulated that appellant had prior convictions in 1989 of two counts of bank fraud and one count of mail fraud. (*Id.* at 233–234.)

¶ 15 Having summarized the testimony, we now proceed to appellant's arguments on appeal. First, appellant contends that trial counsel, Ernest Sharif, Esq., was ineffective for failing to secure an interpreter or real-time transcription in order to ensure that appellant was able to hear the testimony and fully participate in his defense. Initially, we set forth the general standard for counsel ineffectiveness:

> 'To prevail on a claim alleging counsel's ineffectiveness, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness.' *Commonwealth v. Wallace,* 555 Pa. 397, 407, 724 A.2d 916, 921 (1999), citing *Commonwealth v. Howard,* 538 Pa. 86, 93, 645 A.2d 1300, 1304 (1994) (other citation omitted). In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a " 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Commonwealth v. Kimball,* 555 Pa. 299, 308, 724 A.2d 326, 331 (1999), quoting *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A " '[r]easonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *Id.* at 309, 724 A.2d at 331, quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052.

*Commonwealth v. Jones,* 811 A.2d 1057, 1060 (Pa.Super.2002), *appeal denied,* 574 Pa. 765, 832 A.2d 435 (2003).

> However, [w]hen an arguable claim of ineffective assistance of counsel has been made, and there has been no evi-

---

**6.** Appellant and the victim worked the night    shift at the mall. (*Id.* at 182.)

dentiary hearing in the [trial court] to permit the defendant to develop evidence on the record to support the claim, and to provide the Commonwealth an opportunity to rebut the claim, this Court will remand for such a hearing. *Commonwealth v. Wallace*, 433 Pa.Super. 518, 641 A.2d 321, 327 (1994) (quotation marks and citations omitted).

¶ 16 As stated above, there was an evidentiary hearing on post-trial motions held June 18, 2004 before Judge Novak, at which both appellant and Attorney Sharif testified. Appellant also presented the testimony of Allison Weber ("Weber"), an audiologist. At that hearing, it was established that appellant suffered from a significant hearing impairment. While, on the first appeal, this court held that Judge Novak did not err in failing to *sua sponte* appoint an interpreter, we specifically left open the issue of trial counsel's ineffectiveness in not requesting one. Appellant's PCRA claim that he was denied a fair trial because of his inability to hear all the testimony raises factual issues which must be addressed in an evidentiary hearing. With respect to this issue, the PCRA court concluded that "[appellant] was able to understand the court proceedings in this case." (PCRA court opinion, 8/18/08 at 3.) However, our concern is that the PCRA court did not preside over appellant's jury trial and did not rule on appellant's post-trial motions and, therefore, it cannot contradict Judge Novak who heard the evidence and reached the opposite conclusion at an earlier stage in the same case.

> The Sixth Amendment guarantees that '[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.' The confrontation clause requires that a defendant be given the opportunity to be physically present at trial, that the defendant be competent to assist in his own defense, and that the defendant understand the language of the forum. A defendant who cannot hear is analogous to a defendant who cannot understand English, and a severely hearing-impaired defendant cannot be tried without adopting reasonable measures to accommodate his or her disability.

*Wallace, supra* at 325, quoting *State v. Schaim*, 65 Ohio St.3d 51, 600 N.E.2d 661, 671–672 (1992) (citations omitted).

¶ 17 Judge Novak, at the hearing on appellant's post-trial motion for a new trial, did not make any finding as to whether Attorney Sharif was ineffective in failing to bring appellant's hearing impairment to the court's attention; however, he did find that appellant has a "significant hearing impairment." (Notes of testimony, 6/18/04 at 111–112.)[7] Weber, the audiologist who was accepted as an expert witness by the court, testified that appellant has a speech understanding ability of 0 percent in his left ear and 28 percent in his right ear.

---

7. The trial court stated: "I find that Mr. Sharif zealously represented [appellant] and was competent in his defense of [appellant]. I make no finding as to whether Mr. Sharif may have been ineffective as to bringing [appellant's] hearing impairment to the Court's attention, as that issue is not before the Court." (*Id.*) As stated earlier, the trial court subsequently *did* find Attorney Sharif ineffective in a trial court opinion following the Commonwealth's appeal of its order granting appellant a new trial: "[Attorney Sharif's] failure to follow up on [appellant's] complaints about his hearing difficulties and to inform the Court about the problem constitutes ineffective assistance in an otherwise sound defense." *Walls, supra* at 12 n. 11, quoting trial court opinion, 9/29/04 at 5. In a supplemental trial court opinion dated October 12, 2004, the trial court acknowledged that the issue of trial counsel ineffectiveness was not before the court on appellant's post-trial motion for extraordinary relief. *Id.*

(*Id.* at 12.) Weber testified that appellant relies primarily on reading lips which, depending on his distance from the speaker and any potential obstacles in his line of sight, would have made it difficult for him to understand witnesses' testimony. (*Id.* at 15.)

¶ 18 At the conclusion of testimony on appellant's post-trial motion, Judge Novak determined that appellant's hearing impairment prevented him from fully participating in his trial:

I find by a preponderance of the evidence that the Defendant was unable to hear some of the evidence brought against him. The Defendant has such a long history of convictions for **crimen falsi** that it is difficult to know when to believe him and when to disbelieve him. But his assertion that he had trouble during the course of the trial hearing some of the evidence against him is corroborated by trial counsel. Trial counsel testified that the Defendant, in fact, told him during the course of the trial that he was missing some of the testimony. This was significant enough that trial counsel attempted to locate the Defendant's hearing aid but was unable to do so during the course of the trial. This was a case in which the Commonwealth alleged that one of two men living together raped the other. The defense was one of consent. It was his defense that they had a voluntary sexual relationship. In a case such as this, nuance and shading are very important. It is very difficult to find the facts in cases of this nature. In hindsight I should have inquired of the Defendant whether he could hear as well from his position at counsel table as he could from the bar when he spoke to me and from the witness stand when he an-

swered the questions of counsel. My observations of the technical advance of realtime during the course of this proceeding indicates to me that its use at trial can significantly diminish the Defendant's inability to hear the evidence against him and to assist his attorney in defending him.

*Id.* at 112–113.

¶ 19 The PCRA court states that trial counsel was unaware of appellant's hearing problem. (PCRA court opinion, 8/18/08 at 3.) However, Judge Novak found that appellant told trial counsel during the course of the trial that he was missing some of the testimony. The trial court's factual findings in this regard are basically the law of the case and are entitled to some weight. At trial, Attorney Sharif indicated he was aware of appellant's hearing impairment when he called appellant to the stand:

MR. SHARIF: Defense calls George Walls to the stand. Mr. Walls has a hearing impairment. He can read lips. He doesn't have a hearing aid. I will speak loudly. I have informed the district attorney of his problem, so we may have to repeat things once or twice.

Notes of testimony, 9/11–15/03 at 165.

¶ 20 At the time of appellant's trial, 42 Pa.C.S.A. § 8701 was in effect, which provides for interpreters for deaf or hearing impaired persons.[8] Attorney Sharif could have requested an interpreter under this rule, but he did not. Furthermore, although appellant was not completely deaf, this did not take him beyond the purview of Section 8701.

[W]e reject the Commonwealth's initial suggestion that a person who has a limited ability to hear, or who has some ability to read lips, is automatically ex-

---

**8.** Section 8701 was repealed in 2006 and replaced by 42 Pa.C.S.A. § 4401 *et seq.* 2006, Nov. 29, P.L. 1538, No. 172, § 4, effective in 60 days [Jan. 29, 2007].

cluded from the purview of section 8701. The basic inquiry must focus upon whether a defendant with a hearing impairment requires an interpreter in order to receive a trial which is fundamentally fair.

*Wallace, supra* at 324 (citations omitted).

¶ 21 The Commonwealth argues that appellant did not appear to have difficulty testifying; however, this is not dispositive. As we stated in *Wallace, supra,* discussing *Peeler v. State,* 750 S.W.2d 687, 690–691 (Mo.Ct.App.1988), just because a defendant is able to adequately understand questions asked of him on direct and cross-examination does not mean that he had a rational understanding of the remainder of the proceedings. *Wallace, supra* at 328. The record reflects that appellant can read lips but otherwise has difficulty hearing. Judge Novak found that appellant's ability to read lips increases with his familiarity with the speaker, and that appellant was familiar with Attorney Sharif and his speech patterns. (Notes of testimony, 6/18/04 at 111.) Appellant testified that when the assistant district attorney's back was to him, he could not hear anything she said. (*Id.* at 77.)

¶ 22 In short, based on the existing record, we find that there is at least arguable merit in appellant's contention that trial counsel was ineffective for failing to request that the trial court appoint an interpreter. Certainly, the issue cannot be deemed patently frivolous and without any support in the record or from other evidence, which is the standard for dismissing a PCRA petition without a hearing. As described at length *supra,* Judge Novak has already found that appellant has a "significant hearing impairment" and that he told trial counsel during the course of the trial that he was missing some of the testimony. At a minimum, the claim raises genuine issues of material fact which

cannot be resolved on the existing record. Therefore, as in *Wallace, supra,* it is necessary to remand for further consideration of this issue. If appellant is able to prove that there was no reasonable basis for trial counsel's failure to request appointment of an interpreter and that he was prejudiced by counsel's omission, *i.e.,* that his hearing was so impaired at time of trial that the absence of an interpreter denied him a fair trial, appellant will be entitled to relief.

¶ 23 We will address appellant's remaining claims in an effort to narrow the scope of the hearing on appellant's PCRA petition. In his second issue on appeal, appellant claims that trial counsel was ineffective for failing to utilize various pieces of evidence, including cell phone records, medical records, and the affidavit of probable cause. With regard to appellant's cell phone records, appellant avers that they show a call from the victim to appellant at 12:16 a.m. on September 10, 2002, the night of the incident, as well as seven additional calls later that day. (Appellant's brief at 40.) Appellant contends that he requested trial counsel obtain these cell phone records, but he failed to do so. (*Id.* at 41–42.) Appellant maintains that these repeated calls from the victim after the incident are relevant because they tend to disprove the victim's allegation that the sexual intercourse was nonconsensual. (*Id.* at 40.)

¶ 24 The Commonwealth responds that these phone records are not exculpatory and would not have changed the outcome of the trial. (Commonwealth's brief at 41–42.) Certainly the fact that the victim called appellant later that night and the next day does not prove that the act was consensual. However, it does tend to corroborate appellant's testimony that the following evening, September 10, 2002, the victim called him about the money. (Notes of testimony, 9/11–15/03 at 186–

188.) Trial counsel did not introduce these cell phone records at trial or cross-examine the victim regarding these repeated telephone calls. In a trial in which everything hinged on credibility, we cannot say that this claim is patently frivolous. Appellant should be allowed to develop this issue further at hearing.

■■■ ¶ 25 Next, appellant contends that trial counsel was ineffective for not impeaching the victim with his emergency room records from UPMC Passavant. According to appellant, the records showed that the victim presented to the emergency room with a "pleasant disposition," even laughing and joking at times, and at one point left the hospital before he had been evaluated, telling the intake nurse that he "changed his mind and did not wish to be seen." (Appellant's brief at 42.) The victim also denied rectal bleeding or pain, and his exam was normal. (*Id.* at 43.)

¶ 26 With regard to the victim's demeanor at the hospital, Detective William Barrett testified that the victim was joking and laughing:

Q. And as part of your investigation, you did an interview with him. Did you notice anything unusual about [the victim]?

A. Not at first, but as I talked to him, it seemed that he laughed inappropriately. At first I thought he seemed silly for someone who had been raped. As I talked to him more and more, it seemed like he had some mental limitations.

Notes of testimony, 9/11–15/03 at 150–151. Therefore, this was brought out at trial.

¶ 27 With regard to the victim's physical exam, Dr. Wadas testified that there was no bleeding or trauma to the victim's anus. (*Id.* at 105–106.) Also, Danner, the foren-

sic scientist, testified that there was no conclusive evidence of blood, and Detective Barrett testified that he did not find any blood in appellant's apartment. (*Id.* at 49–50, 115, 160.) Therefore, these alleged inconsistencies between the victim's testimony and the medical records were explored by trial counsel. In addition, the records were admitted into evidence and permitted to be read by the jury. (*Id.* at 233–235.) This issue plainly lacks merit.

¶ 28 Appellant also contends that trial counsel was ineffective in failing to utilize the affidavit of probable cause, in which it is stated that the victim was bleeding from his anus after the incident, later required further medical treatment "when he realized that he was again bleeding from his rectum to the degree that he had filled the toilet bowl with blood," and was in "severe pain." (Docket No. 1.) Again, the victim's testimony at trial that he was bleeding profusely after the incident, including in his underwear, was contradicted by Dr. Wadas's testimony, the testimony of Danner and Detective Barrett, and the medical records. Introducing the affidavit of probable cause would not have changed anything. This issue lacks merit and the PCRA court did not abuse its discretion in dismissing it without a hearing.

■■■ ¶ 29 In his third issue on appeal, appellant claims that the trial court erred in finding him to be an SVP, and that Attorney Brandstetter was ineffective for failing to raise the issue in an appeal. (Appellant's brief at 48.) Appellant argues that Dr. Paul Bernstein, Ph.D., a psychologist and member of the Sexual Offenders Assessment Board who conducted appellant's Megan's Law assessment, relied on improper factors and incorrect information to support his determination that appellant met the statutory requirements for SVP

status.[9] We find this issue waived.

'Ordinarily, absent extraordinary circumstances, the failure to file a direct appeal from the judgment of sentence amounts to waiver of any claim which could have been raised in such an appeal, thereby precluding collateral relief.... To successfully avoid a finding of waiver, the appellant "must prove that he requested an appeal and that counsel disregarded the request." ' *Commonwealth v. Lehr*, 400 Pa.Super. 514, 583 A.2d 1234, 1235 (1990), quoting *Commonwealth v. Hudson*, 336 Pa.Super. 174, 485 A.2d 487, 489 (1984).

*Commonwealth v. McKinney*, 772 A.2d 1023, 1025 (Pa.Super.2001). *See also* 42 Pa.C.S.A. § 9544(b) ("For purposes of this subchapter, an issue is waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding.").

¶ 30 Appellant did not take a direct appeal from the August 2, 2006 judgment of sentence, nor does he request reinstatement of his direct appeal rights *nunc pro tunc*. Appellant presents a token allegation of post-trial counsel's ineffectiveness for failing to file a direct appeal raising the SVP issue, but avers no specific facts in support of this allegation. (Appellant's brief at 55; supplemental amended PCRA petition, 11/2/07 at 22.) *See Commonwealth v. Collins*, 598 Pa. 397, 433, 957 A.2d 237, 259 (2008) ("[T]he mere incantation of the magic words of counsel ineffectiveness is insufficient to overcome waiver."), quoting *Commonwealth v. Washington*, 592 Pa. 698, 738, 927 A.2d 586, 609 (2007); *Commonwealth v. Harmon*, 738 A.2d 1023, 1024 (Pa.Super.1999), *appeal denied*, 562 Pa. 666, 753 A.2d 815 (2000) ("Mere allegation will not suffice;

the burden is on Appellant to plead and prove that his request for an appeal was ignored or rejected by trial counsel.") (citations omitted) (footnote omitted). Because the trial court's SVP determination was cognizable on direct appeal from Judge Mariani's sentencing order, and appellant has failed to set forth specific facts demonstrating that post-trial counsel disregarded a request to file a direct appeal, the issue is deemed waived.

▉▉▉ ¶ 31 Appellant also makes various claims of Attorney Brandstetter's ineffectiveness in connection with the SVP hearing, *e.g.*, for failing to have appellant examined by an independent expert, failing to object to the admission of Dr. Bernstein's report, and failing to secure the testimony of certain witnesses. (Appellant's brief at 53–55; supplemental amended PCRA petition, 11/2/07 at 21.) These claims were not addressed by the PCRA court. (PCRA court opinion, 8/18/08 at 3.) The PCRA court only considered appellant's allegation of trial court error. (*Id.*) Therefore, on remand, it is necessary for the PCRA court to address appellant's substantive claims of post-trial counsel ineffectiveness and, if warranted, to take testimony from Attorney Brandstetter regarding his representation of appellant during the SVP/sentencing stage of the proceedings. Of course, if it is determined that appellant should be awarded a new trial, the issue of Attorney Brandstetter's alleged ineffectiveness becomes moot.

▉▉▉▉ ¶ 32 In his fourth issue on appeal, appellant claims that trial counsel was ineffective for failing to call a medical expert witness. Appellant contends that such a witness would have testified that the medical evidence was inconsistent with forced penetration. In the alternative, ap-

9. For example, appellant contends that Dr. Bernstein relied on prior alleged criminal conduct for which appellant was never charged.

pellant argues that the PCRA court should have appointed an expert to review the evidence and help him develop the claim.

> In order to prevail on a claim of ineffectiveness for failing to call a witness, a defendant must prove, in addition to meeting the three *Pierce* [10] requirements, that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied him a fair trial.

*Commonwealth v. Wright*, 599 Pa. 270, 331, 961 A.2d 119, 155 (2008) (citations omitted).

¶ 33 Appellant has failed to set forth who this proposed medical expert is or to what he would have testified. Appellant posits that such an expert would testify that the medical evidence, *i.e.*, lack of trauma to the victim's anus, is inconsistent with the victim's testimony of a brutal rape; however, he offers no affidavits or other evidence in support of this claim. Appellant's argument is based on theory and mere speculation.

¶ 34 Furthermore, appellant has failed to demonstrate prejudice. Dr. Wadas testified that there was no blood or evidence of trauma. (Notes of testimony, 9/11–15/03 at 104–105.) While Dr. Wadas testified that he will "not necessarily" find evidence of physical trauma in a sexual assault victim, the lack of any symptoms was inconsistent with the victim's testimony and trial counsel made this point on cross-examination. (*Id.* at 105, 107.) Thus, appellant is not entitled to relief on this issue.

¶ 35 Regarding appellant's request that the PCRA court appoint an expert to review the medical evidence (supplemental amended PCRA petition, 11/2/07 at 16), as the Commonwealth states, this is akin to a request for discovery in post-conviction proceedings which is reviewed for an abuse of discretion. *Commonwealth v. Bryant*, 579 Pa. 119, 159, 855 A.2d 726, 749–750 (2004) (citations omitted). Under Pa.R.E. 902(E)(1), discovery will not be permitted absent a showing of "exceptional circumstances." Certainly, appellant has failed to demonstrate exceptional circumstances warranting the appointment of an expert to review the medical evidence in this case, where the Commonwealth's own expert already testified that the victim suffered no significant trauma, which was not inconsistent with appellant's defense of consent. The PCRA court did not err in denying appellant's request for an expert.

¶ 36 In his fifth issue on appeal, appellant contends that trial counsel was ineffective in failing to request a specific jury charge on the defense of consent. Appellant argues that consent was the primary issue in the case and he was prejudiced by counsel's failure to request the standard jury instruction. (Appellant's brief at 61.) The trial court did not specifically instruct the jury that the Commonwealth bears the burden of disproving that the victim gave his consent. (*Id.* at 62.) After careful review, we are constrained to agree that this issue also has arguable merit.

¶ 37 Appellant is correct that since he did not deny that the sexual act occurred, the case boiled down to the issue of consent. While the trial court did instruct the jury that the Commonwealth is required to prove its case beyond a reasonable doubt, it did not specifically instruct the jury that

---

**10.** *Commonwealth v. Pierce*, 567 Pa. 186, 786 A.2d 203 (2001).

the Commonwealth has the burden of proving that the victim, whether by words or behavior, did not give his consent.[11] In addition, the trial court instructed the jury that lack of consent is a necessary element of the sexual crimes charged, IDSI, sexual assault, and indecent assault; however, the court did not give a separate instruction specifically dedicated to the issue of consent as suggested by the standard jury instructions. (Notes of testimony, 9/11–15/03 at 293–296.)

¶ 38 In *Commonwealth v. Prince*, 719 A.2d 1086 (Pa.Super.1998), the appellant was convicted of one count of sexual assault and one count of unlawful restraint. The appellant was acquitted of other charges including rape and IDSI. As in the instant case, the appellant relied on a defense of consent. On appeal, the appellant claimed that trial counsel was ineffective for not requesting Section 8.311B of the Pa.SSJI (Crim), "Consent as a defense." Section 8.311B is based on Section 311 of the Crimes Code.[12]

¶ 39 A divided panel of this court agreed,[13] and the majority stated:

This was obviously a close case on the issue of consent as the jury's verdict, set forth *supra*, indicates. It was therefore imperative that the jury be instructed

clearly and definitively as to where the burden lay on the issue of consent.

*Id.* at 1090.

Lack of consent is all that criminalizes the acts at issue, in situations in which the only evidence often will be the conflicting testimony of the parties who engaged in the acts. We can imagine no situation in which a focused, cogent charge, emphasizing where and to what degree the burden of proof lies and what evidence may be considered, is more critical to a determination of guilt or innocence.

*Id.* at 1091. We remanded for an evidentiary hearing on the issue.

¶ 40 As stated above, the trial court did instruct the jury generally on presumption of innocence and the Commonwealth's burden of proving each element of each crime beyond a reasonable doubt. (Notes of testimony, 9/11–15/03 at 284.) Our decision in *Prince* makes clear that this may be insufficient in a case of this nature. In *Prince*, the trial court gave similar instructions concerning the Commonwealth's burden of proof; however, we held that the appellant was entitled to a specific instruction on lack of consent:

We recognize that after setting forth the elements of the crime of sexual assault, the trial court did charge the jury that

---

11. The consent issue was further complicated by testimony that the victim has below-average mental functioning. As stated above, the trial court granted appellant's motion for judgment of acquittal with regard to the charges relating to incapacity.

12. Section 8.311B provides, in relevant part:
   (1) The consent of the victim is a defense to a charge of ____. [Consent is present if the victim at the time of the alleged crime (is willing that ____) (is willing that ____ and makes his willingness known to the defendant by words or behavior)(____)].

(4) The burden is on the Commonwealth to prove beyond reasonable doubt that the alleged victim did not give (a legally effective) consent. Thus you cannot convict the defendant unless you are satisfied beyond reasonable doubt that (either) ____ did not give consent (or if ____ did give consent, his consent was not legally effective).
Pa.SSJI (Crim) Section 8.311B, "Consent a defense."

13. Judge Eakin, now Justice Eakin, dissented on the issue of whether the appellant was entitled to a specific instruction on the element of consent.

the Commonwealth bore the burden of proving each element beyond a reasonable doubt. The court also charged the jury that it was not appellant's burden to prove his innocence, but rather the Commonwealth's burden to prove his guilt as to each element of all of the crimes charged beyond a reasonable doubt. *Nevertheless, we find that appellant was entitled to a focused charge on consent, also emphasizing specifically where the burden lay.*

*Prince, supra* at 1091 (citations to the record omitted) (emphasis added). Therefore, this claim has arguable merit.[14]

¶ 41 In his sixth and final issue on appeal, appellant claims that trial counsel was ineffective for failing to object to amendment of the information. (Appellant's brief at 63.) Attorney Brandstetter raised the identical issue in post-trial motions, and the motion was denied. (Notes of testimony, 5/5/04 at 6–9.) Appellant complains that he was prejudiced by the Commonwealth's unilateral amendment of the information to include a count of sexual assault. Appellant relies upon Pennsylvania Rule of Criminal Procedure 564 (formerly Rule 229), which provides:

### Rule 564. Amendment of Information

The court may allow an information to be amended when there is a defect in form, the description of the offense(s), the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment, the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Pa.R.Crim.P. 564. "We have stated that the purpose of Rule 564 is to ensure that a defendant is fully apprised of the charges, and to avoid prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed." *Commonwealth v. Sinclair*, 897 A.2d 1218, 1221 (Pa.Super.2006), citing *Commonwealth v. Duda*, 831 A.2d 728, 732 (Pa.Super.2003). "[O]ur Supreme Court has stated that following an amendment, relief is warranted only when the variance between the original and the new charges prejudices an appellant by, for example, rendering defenses which might have been raised against the original charges ineffective with respect to the substituted charges." *Id.* at 1223, citing *Commonwealth v. Brown*, 556 Pa. 131, 135, 727 A.2d 541, 543 (1999). Appellant contends that prior to the amendment of the information, the Commonwealth would have had to prove actual use of force, not merely lack of consent. (Appellant's brief at 64–65.)

¶ 42 Simply stated, the record reveals that the basic premise of appellant's argument is incorrect; the Commonwealth did not amend the information. The criminal complaint filed September 10, 2002 contained, *inter alia,* charges of rape by forcible compulsion and aggravated indecent assault. Following appellant's preliminary hearing on September 18, 2002, the Commonwealth decided to withdraw two counts of rape and one count of aggravated indecent assault, and substitute them with charges of IDSI (incapable of consent) and sexual assault. (Commonwealth's brief at 71.) The information was filed on November 15, 2002 and appellant was formally arraigned on November 22, 2002, at which time he received a copy of the information.

---

**14.** We also note that *Prince* was decided approximately five years prior to appellant's trial.

The information contained all charges on which the parties eventually proceeded to trial in September 2003, almost one year later. The information filed November 15, 2002 was never amended. (Docket No. 2; notes of testimony, 5/5/04 at 8.)

¶ 43 The case relied on by appellant, *Commonwealth v. Gray*, 329 Pa.Super. 347, 478 A.2d 822 (1984) (*see* notes of testimony, 5/5/04 at 6–7; appellant's brief at 66), is readily distinguishable, where the trial court permitted the Commonwealth to amend the information in the middle of trial, after presentation of its case-in-chief. *Id.* at 823–824. In addition, the amendment in *Gray* resulted in the defendant being charged under an entirely different subsection of the criminal trespass statute, changing the grade of the offense as well as the elements required to prove guilt. *Id.* at 824–825.

¶ 44 The gist of appellant's argument really seems to be that the Commonwealth was not allowed to withdraw/substitute offenses different from those originally charged in the criminal complaint. In fact, the rules specifically provide that in filing the information following the preliminary hearing, the Commonwealth is not absolutely bound by whatever charges were listed in the complaint. *See Commonwealth v. Taylor*, 346 Pa.Super. 599, 500 A.2d 110, 114 (1985) (*en banc), affirmed,* 516 Pa. 21, 531 A.2d 1111 (1987) ("the District Attorney's office has the power to modify the information as it relates to the complaint (so long as the offense is substantially the same or cognate to the offense alleged in the complaint) to conform to what it perceives to be its proof or its determination of prosecutorial merit") (citations omitted); Pa.R.Crim.P. 560, 561. *See also Commonwealth v. Jacobs,* 433 Pa.Super. 411, 640 A.2d 1326, 1329 (1994), *appeal denied,* 542 Pa. 661, 668 A.2d 1125 (1995) ("Rule [560](b)(5) does not require

that the crime charged in the Information be identical to that charged in the Complaint as long as the charge is cognate to the one laid in the Complaint. This is so because [a] defendant cannot be required to answer a charge different from or unrelated to the one for which he was arrested and held to bail.") (quotation marks and citations omitted). Clearly, the crime of sexual assault is cognate to crimes charged in the complaint including indecent assault under 18 Pa.C.S.A. § 3126(a)(1), which also requires lack of consent by the complainant. Therefore, contrary to appellant's argument on appeal, he was on notice when the complaint was filed that consent was going to be an issue.

¶ 45 In the instant case, the information was not amended, appellant was fully apprised of the charges against him, and he had a full and fair opportunity to prepare a defense. As the underlying issue is lacking in merit, trial counsel cannot be deemed ineffective for failing to have raised it. *See Commonwealth v. Fisher,* 863 A.2d 574, 576 (Pa.Super.2004) ("Trial counsel cannot be found ineffective for failing to pursue a baseless or meritless claim."), citing *Commonwealth v. Pierce,* 515 Pa. 153, 527 A.2d 973 (1987). Appellant's final claim fails.

¶ 46 For the foregoing reasons, we determine that not all of appellant's issues are patently frivolous and without any trace of support in the record or from other evidence; additionally, the issue of whether trial counsel was ineffective for failing to request that the trial court appoint an interpreter or provide real-time transcription of the trial court proceedings raises genuine issues of material fact which can only be resolved at an evidentiary hearing. On post-trial motions, the trial court already decided that appellant has a significant hearing impairment and that trial counsel was aware, at least to some

extent, of his disability. Whether or not appellant suffered actual prejudice as a result of this alleged omission is a matter for the PCRA court to decide.

¶ 47 Similarly, based on our holding in *Prince, supra*, we cannot say that appellant's claim that trial counsel was ineffective for failing to request a separate, specific instruction on the issue of consent is frivolous. Therefore, we will remand to the PCRA court for a hearing on these two issues, as well as appellant's claim that trial counsel was ineffective for failing to introduce appellant's cell phone records. As described in issue three, the PCRA court should also consider appellant's claims relating to post-trial counsel ineffectiveness and determine whether it is necessary to hear testimony from Attorney Brandstetter. We emphasize that we do not express any opinion as to the ultimate merit of these issues at this time. If appellant is again denied relief following an evidentiary hearing, he can take another appeal. Appellant's remaining issues are patently without merit and/or waived, and the PCRA court did not err in dismissing these issues without an evidentiary hearing following Rule 907 notice.

¶ 48 Order vacated in part and affirmed in part. Remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.