J-S49036-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| PETER BAYNES | |
| Appellant | No. 1908 WDA 2016 |

Appeal from the PCRA Order November 22, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0006305-2011

BEFORE: DUBOW, SOLANO, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:          **FILED AUGUST 14, 2017**

Appellant, Peter Baynes, appeals from the order entered in the Allegheny County Court of Common Pleas denying his first petition filed pursuant to the Post Conviction Relief Act[1] ("PCRA").  Appellant contends trial counsel was ineffective for failing to call a defense witness at trial.  We affirm.

This Court previously summarized the relevant facts and procedural history of this case as follows:

> Anna Gomez and [Appellant] dated for approximately four years and resided together in the first floor apartment at 317 Natchez Street in the Mount Washington area of the City of Pittsburgh, Allegheny County.  In the late evening hours of Friday, April 22, 2011, [Appellant] approached

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S §§ 9541-9546.

Gomez and accused her of having affairs with their landlord, his best friend, and several other men. When Gomez denied these allegations [Appellant] grabbed her, threw her onto the bed, and ripped off her clothes. [Appellant] climbed on top of her as he said, "We're going to get to the bottom of this." [Appellant] restrained Gomez by kneeling on her shoulders, and punched her repeatedly in the face. Gomez pleaded for [Appellant] to stop.

[Appellant] ran into another room to retrieve an aluminum baseball bat ("bat"). Upon returning he stood over her on the bed, holding the bat extended above his head with both arms. [Appellant] said, "Now you are going to tell me the truth. Don't move. We are going to get to the bottom of this." When he started to ask her questions about the alleged affairs, she was able to get to the foot of the bed and attempted to call 911. [Appellant] hit her twice in the head with the bat: once on top of her head and once across her face. This knocked her onto the floor and caused blood to run from her head.

With Gomez lying on the ground on her back, [Appellant] stood over her with the bat and demanded that she tell him the truth. Gomez rolled over in an attempt to stand up and run away. [Appellant] stopped her by hitting her with the bat on her back, arms, elbow, and legs. Gomez tried to stand up and lost consciousness. When Gomez awoke she was on the bed and [Appellant] told her to wash herself. She stood up and tried to walk, but lost consciousness again. [Appellant] threw a glass of cold liquid on her face to wake her up and said, "Go ahead and get washed off, I am tired of you playing."

She made her way to the bathroom, losing consciousness along the way. At some point [Appellant] picked her up and "tossed" her into the bathtub. The shower was running and [Appellant] told her to clean herself. Gomez rinsed the blood off her face as [Appellant] said, "Look what you made

- 2 -

me do to you. Why don't you just listen to me?" Gomez stood up and lost consciousness again.

When she next awoke, [Appellant] was holding her by the neck against the bathroom window. He dropped her onto the floor and tried to kick her in the face to make her stand up. She blocked his foot with her hand and again lost consciousness. She next awoke in bed with a towel wrapped around her head. The apartment was quiet, it was dark outside, and her cat was lying on her.

She awoke Sunday morning to [Appellant] punching her and yelling at her. Desperate for the attacks to stop, Gomez said, "Yes, I have had affairs with everybody." [Appellant] stopped hitting her and instead asked details about the affairs. Gomez made up stories to pacify [Appellant]. Later that day [Appellant] pushed Gomez against the bedroom window, which overlooked the front porch. She broke off all of the blinds as she fell to the floor, and at his direction she crawled towards the bed.

City of Pittsburgh police officers Troy Signorella, Ryan Young, and Dale Ruble were dispatched to 317 Natchez Street late that Sunday afternoon on a domestic violence call. The officers knocked on the front and back door with no response. Officer Young remained at the back door while [O]fficer Signorella proceeded to the front porch, where he was able to look in the window.

When [Appellant] saw [O]fficer Signorella looking in the bedroom window he told Gomez, "I told you that if the police ever got here I was going to kill you." [Appellant] ran between the bedroom and the living room looking for the bat. Gomez remained on the floor between the bed and the window, covered in a sheet. She had blood on her face and arms, there was blood on the wall, bed, and floor around her. Officer Signorella radioed for a medic, signaled to the officers Gomez's condition and location, and told [Appellant] to let them in.

[Appellant] complied and opened the rear door for [O]fficer Young. The apartment was ransacked and bloody, with the heaviest concentration of blood in the bedroom. Officer Young proceeded directly to the bedroom to check on Gomez. Officer Signorella remained next to [Appellant], who repeatedly yelled at Gomez, "Tell me who did this to you."

Officer Young updated the en route medics that Gomez had several head injuries, extreme swelling and bruising on her body, and difficulty breathing. Gomez told [O]fficer Young that [Appellant] attacked her. Officer Young indicated to [O]fficer Signorella to arrest [Appellant], and [O]fficer Signorella handcuffed [Appellant] to take him outside.

Officer Ruble noticed dried blood spots on [Appellant's] shirt and a swollen right hand, and transported him to a different hospital than Gomez. [Appellant] gratuitously remarked en route that his hand was swollen from punching walls. [Appellant] was released from the hospital that day and transported to the Allegheny County Jail and charged as noted hereinabove. En route he repeatedly told [O]fficer Ruble that Gomez had been "seeing his best friend."

Medics transported Gomez to the hospital. She had not eaten nor changed clothes since Friday evening. Gomez had a pre-existing condition (Parkinson's disease) which complicated her treatment and condition. Due to previously implanted deep brain stimulators that interrupted EKG testing, the hospital was unable to ascertain what brain damage Gomez may have suffered as a result of this attack. Gomez suffered multiple ecchymosis throughout her body, two fractured vertebrae, three fractured ribs, a pneumothorax, facial bone contusions, acute renal failure, and four forehead lacerations. She was treated with fluid resuscitation and her lacerations were stapled. The hospital released Gomez five days later on April 29, 2011, but she was readmitted on May 4, 2011, for an infection in her right forehead wound, a right

ankle abscess, right kneecap fracture, and post traumatic stress disorder. The infection and abscess were surgically treated. Gomez was released to an assisted living home on May 12, 2011, where she spent one month. At the time of trial Gomez had scars and lumps on her forehead, nerve damage in her eyes and face, required the use of a cane or walker to ambulate, and it was apparent that the injuries she endured were severe and enduring.

Trial court opinion, 4/4/13 at 4-8 (citations omitted).

Appellant testified at trial and claimed that he did not commit the assaults against the victim. He averred that the beating occurred during a two-hour period of time when he left the apartment to give the victim time to decide whether she wanted to stay with [A]ppellant or leave to have an affair with his best friend. Appellant testified that he sat on Grandview Avenue in Mt. Washington for about two hours looking at the City of Pittsburgh and when he returned home, he found the house ransacked and bloody, and the victim terribly beaten. He testified that the victim said that "they" beat her and stole some money. Appellant insisted that the victim would not identify her attackers as they were a "motorcycle gang." He also claimed that the victim would not let him call an ambulance.

Following a jury trial before the Honorable Edward J. Borkowski, [A]ppellant was found guilty of [aggravated assault—serious bodily injury, terroristic threats, unlawful restraint, and false imprisonment]. On July 12, 2012, Judge Borkowski sentenced [A]ppellant to an aggregate term of 13 to 26 years' imprisonment. A timely notice of appeal was filed on December 27, 2012.

*Commonwealth v. Baynes*, 2023 WDA 2012 at 1-5 (Pa. Super. filed Mar. 11, 2014) (unpublished memorandum). This Court affirmed Appellant's judgment of sentence, and our Supreme Court denied allowance of appeal. *See Commonwealth v. Baynes*, 179 WAL 2014 (Pa. filed Oct. 2, 2014).

On January 7, 2015, Appellant timely filed a *pro se* PCRA petition. The PCRA court appointed counsel who subsequently filed an amended petition, claiming that trial counsel was ineffective for failing to investigate or call Robert Spencer as a defense witness at trial. The Commonwealth filed an answer in response. Thereafter, Appellant filed a motion to appoint an investigator to locate, interview, and serve a subpoena on Spencer. The PCRA court denied the motion and issued notice of its intent to dismiss Appellant's petition without a hearing pursuant to Pa.R.Crim.P. 907. On November 22, 2016, the PCRA court denied Appellant's petition. Appellant timely appealed.

Appellant raises the following issue for our review:

> Whether the trial court erred in denying Appellant's [PCRA] Petition without a hearing because trial counsel provided ineffective assistance of counsel for failing to investigate or call Robert Spencer as a defense witness at trial.

Appellant's Brief at 4.

Appellant argues trial counsel was ineffective for failing to investigate or call defense witness Spencer at trial. Appellant claims trial counsel knew of Spencer's identity, that he was on the list of potential witnesses, that he was subpoenaed for trial, and that he was present in the courtroom at the beginning of Appellant's trial. Appellant states the victim, Ms. Gomez, testified that Spencer was at the apartment on the Saturday of the incident and threatened her. Appellant contends trial counsel knew Spencer would testify on Appellant's behalf and would have been able to refute that

Spencer was ever at the apartment threatening the victim. Appellant asserts trial counsel had no reasonable basis for her inaction, and the absence of Spencer's testimony prejudiced Appellant and denied him a fair trial. Appellant maintains his PCRA petition presented a material issue regarding trial counsel's ineffectiveness and, therefore, the PCRA court should have held an evidentiary hearing. Appellant concludes his judgment of sentence should be vacated and the case should be remanded for a new trial, or, alternatively, the case should be remanded for an evidentiary hearing. No relief is due.

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. **Commonwealth v. Conway**, 14 A.3d 101, 108 (Pa. Super. 2011). This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. **Commonwealth v. Boyd**, 923 A.2d 513, 515 (Pa. Super. 2007). We give no such deference, however, to the court's legal conclusions. **Commonwealth v. Ford**, 44 A.3d 1190, 1194 (Pa. Super. 2012).

Nevertheless, "a PCRA petitioner is not automatically entitled to an evidentiary hearing. We review the PCRA court's decision dismissing a petition without a hearing for an abuse of discretion." **Commonwealth v. Miller**, 102 A.3d 988, 992 (Pa. Super. 2014) (citation omitted). Further,

when the PCRA court denies relief without an evidentiary hearing, this Court must examine each of the issues raised in light of the record to determine whether the PCRA court erred in concluding there were no genuine issues of material fact. *Id.* (citation omitted).

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) [a]ppellant was prejudiced by counsel's action or omission. To demonstrate prejudice, an appellant must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

*Commonwealth v. Perry*, 959 A.2d 932, 936 (Pa. Super. 2008) (quotation marks and citations omitted). Furthermore,

> In order to prevail on a claim of ineffectiveness for failing to call a witness, a defendant must prove, in addition to meeting the three [ineffectiveness] requirements, that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness's testimony was so prejudicial as to have denied him a fair trial.

*Commonwealth v. Walls*, 993 A.2d 289, 302 (Pa. Super. 2010) (citation omitted).

Additionally,

> Where a petitioner requests an evidentiary hearing, the petition shall include a signed certification as to each

intended witness stating the witness's name, address, date of birth and substance of testimony and shall include any documents material to that witness's testimony. Failure to substantially comply with the requirements of this paragraph shall render the proposed witness's testimony inadmissible.

42 Pa.C.S. § 9545(d)(1).

Instantly, neither Appellant's *pro se* nor counseled petitions included a signed, witness certification for Robert Spencer to comply with the requirements of 42 Pa.C.S. § 9545(d)(1).[2]  Thus, Appellant failed to plead that Spencer was willing to testify for the defense or the substance of his testimony.  *See* 42 Pa.C.S. § 9545(d)(1); ***Walls***, 993 A.2d at 302. Therefore, any proposed testimony from Spencer would have been inadmissible.  *See* 42 Pa.C.S. § 9545(d)(1).

In any event, Appellant appears to suggest that Spencer would have been able to impeach the credibility of Ms. Gomez's account of the attack, in particular, her testimony that she heard Spencer threatening her during the time Appellant attacked her.  Appellant's Brief at 28-29.  According to Appellant, Spencer could have contradicted Ms. Gomez's testimony by stating he (Spencer) was not present at the time of the attack and did not threaten Ms. Gomez.  ***Id.***  Although Ms. Gomez testified that she heard Spencer threaten her while Appellant was attacking her on Saturday, the second day of the attack, N.T. Trial, 4/16/12-4/17/12, at 73, we discern no

---

[2] We note that Appellant's brief does not challenge the PCRA court's decision not to appoint an investigator to locate Robert Spencer.

basis to conclude that rebuttal of this minor point would have materially affected the credibility of Ms. Gomez or the fairness of the trial. Ms. Gomez consistently testified that Appellant attacked her over a three-day period, from Friday to Sunday. *Id.* at 35-52. Officer Young also testified that upon responding to the residence Ms. Gomez told him that Appellant had assaulted her. *Id.* at 101. Lastly, Spencer's purported testimony would not have advanced Appellant's defense that another individual or group of individuals attacked Ms. Gomez while Appellant was away from the residence for two hours on Sunday. Thus, Appellant has failed to demonstrate that the absence of this testimony was exculpatory or that the absence of the evidence deprived him of a fair trial. *See Walls*, 993 A.2d at 302. Accordingly, we affirm the PCRA court's decision denying Appellant's petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/14/2017