J-S19037-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| BOBY PROPHETE, | : | |
| | : | |
| Appellant | : | No. 1452 EDA 2015 |

Appeal from the PCRA Order April 9, 2015
in the Court of Common Pleas of Philadelphia County,
Criminal Division, No(s): CP-51-CR-0009790-2012

BEFORE:  BENDER, P.J.E., STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED MARCH 29, 2016**

Boby Prophete ("Prophete") appeals from the dismissal of his Petiton filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

The PCRA court set forth the relevant factual and procedural history in its Opinion, which we adopt for purposes of this appeal.  *See* PCRA Court Opinion, 9/8/15, at 1-5.

On March 8, 2013, the trial court sentenced Prophete to an aggregate sentence of 7 to 15 years in prison, followed by 5 years of probation. Prophete did not appeal his judgment of sentence.  On March 24, 2014, Prophete, acting *pro se*, filed the instant PCRA Petition.  The PCRA court appointed counsel, who thereafter filed an amended Petition.[2]  On February 18, 2015, the PCRA court issued a Notice of its intent to dismiss the Petition,

---

[1] *See* 42 Pa.C.S.A. §§ 9541-9546.

[2] The record reflects that Prophete's counsel also filed a second amended Petition, and a supplement to the second amended Petition.

pursuant to Pa.R.Crim.P. 907. Prophete did not file a response to the Rule 907 Notice. On April 9, 2015, the PCRA court entered an Order dismissing Prophete's Petition. Thereafter, Prophete filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal.

On appeal, Prophete raises the following issues for our review:

1. Did the lower court err in denying PCRA relief without holding an evidentiary hearing to determine whether counsel was ineffective for failing to determine whether [Prophete] was making a knowing, intelligent and voluntary plea[,] and for failing to inform [Prophete] that he had a valid consent defense?

2. Did the lower court err in denying PCRA relief without holding an evidentiary hearing to determine whether correspondence between [Prophete] and the [victim] was new evidence[,] and would have made a difference at trial?

Brief for Appellant at 6.

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error.

*Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

The right to an evidentiary hearing on a PCRA petition is not absolute, and the PCRA court may decline to hold a hearing if the petitioner's claims are patently frivolous with no support in either the record or other evidence. *See Commonwealth v. Walls*, 993 A.2d 289, 295 (Pa. Super. 2010);

- 2 -

Pa.R.Crim.P. 907; *see also Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. 2008) (explaining that "[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary.").

In his first issue, Prophete contends that his mental illness presented both his counsel and the trial court with a responsibility to determine the extent of Prophete's ability to knowingly, intelligently and voluntarily enter a plea. Brief for Appellant at 10-11. Prophete asserts that his counsel knew that Prophete's mental illness was going untreated at the time of the incident, and that it was incumbent upon counsel to explore the possibility that Prophete was not competent to stand trial and had an insanity defense. *Id*. at 11. Prophete also claims that his counsel failed to advise him of a consent defense. *Id*. Prophete asserts that the PCRA court erred by failing to conduct a hearing on these issues, and contends that "[t]here is absolutely nothing in the record for the court to make a determination of th[ese] issue[s] and[,] therefore[,] as the record does not support the lower court's decision, that decision must be reversed and remanded." *Id*.

The PCRA court set forth the relevant law, addressed Prophete's first claim, and concluded that it lacks merit. *See* PCRA Court Opinion, 9/8/15, at 5-6, 7-9, 11-12. We agree with the reasoning of the PCRA court, and

- 3 -

conclude that its determination is supported by the evidence of record and is free of legal error. *See id*.

In his second issue, Prophete contends that the communications between himself and the victim constitute after-discovered evidence that entitle him to a new trial. Brief for Appellant at 12. Prophete asserts that the communications were not discovered until after the entry of his guilty plea, and are not merely cumulative, corroborative or impeachment evidence. *Id*. Prophete claims that the presentation of this evidence could have resulted in a different verdict. *Id*. Prophete argues that the PCRA court erred by failing to conduct an evidentiary hearing to determine the credibility of the communications, and the impact that such communications could have had on the trial. *Id*. at 13.

The PCRA court set forth the relevant law, addressed Prophete's second claim, and concluded that it lacks merit. *See* PCRA Court Opinion, 9/8/15, at 12-14. We agree with the reasoning of the PCRA court, and conclude that its determination is supported by the evidence of record and is free of legal error. *See id*. Additionally, Prophete voluntarily and knowingly pled guilty to involuntary deviate sexual intercourse and simple assault, and admitted to the factual bases for his conviction of these crimes. *See id*. at 2-4.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/29/2016

Circulated 03/04/2016 03:43 PM

FILED

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

SEP 0 8 2015

Criminal Appeals Unit
First Judicial District of PA

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0009790-2012 |
| | : | |
| VS. | : | 1452 EDA 2015 |
| | : | |
| BOBY PROPHETE | : | |

## OPINION

Defendant Boby Prophete appeals from the PCRA Court's dismissal of his Amended Petition under the Post Conviction Relief Act ("PCRA"). On appeal, Defendant argues that: (1) his trial counsel was ineffective for failing to ensure that Defendant's guilty plea was knowing and voluntary given his alleged mental illness and his failure to take prescribed medication; (2) his trial counsel was ineffective for failing to pursue an insanity defense given Defendant's alleged mental illness; (3) his trial counsel was ineffective for failing to advise Defendant that he had a viable consent defense; and (4) exculpatory letters from the victim constituted after-discovered evidence. For the reasons stated herein, the Superior Court should affirm the PCRA Court's order.

CP-51-CR-0009790-2012 Comm. v. Prophete, Boby
Opinion

## FACTUAL BACKGROUND

### 1. The Rape On 2216 Greenwich Street



7341615431

On July 31, 2012, Defendant was inside 2216 Greenwich Street with his girlfriend Michelle Williams. Defendant punched Williams in the face and threw her to the ground, causing bruising to her face. Defendant forced Williams to suck his penis, and afterward penetrated her vagina with his fingers. Williams attempted to fight off Defendant. Defendant inserted his penis into Williams' vagina and later ejaculated in her mouth. Defendant forced Williams to stay the

whole night. Immediately after she was allowed to leave the house, Williams went to the police to report the rape. N.T. 12/05/2012 at 11-13.

Williams was taken to the hospital where a rape kit was performed on her. Although the criminalistics report came back positive for DNA, the DNA results were not complete at the time of the guilty plea hearing. Defendant gave a statement to a detective in which he admitted to punching Williams in the face. He also admitted that Williams told him "no" prior to him putting his penis in her vagina, stating, "Yes, she said no at the last minute." During the guilty plea hearing, Defendant testified twice that his "statement [to the detectives] is not wrong" and that he "did tell [the detective] what happened." *Id.* at 13-15, 17, 19, 21.

2.     Defendant's Guilty Plea Hearing

On December 5, 2012, Defendant pleaded guilty to involuntary deviate sexual intercourse and simple assault. During that hearing, he stated, "No sir" when asked if his mental health treatment or diagnosis would impact his ability to understand. When the trial court asked him, "what […] are we going to do today," he responded, "To resolve the case, please." When the trial court further inquired, "how would you like to resolve the case today," he responded, "By pleading guilty to it." Defendant acknowledged that he was represented by a defense attorney and that he reviewed the entire guilty plea form with his attorney before signing it. Defendant also testified that—although he had been treated for a mental illness—his treatment and diagnosis for the mental illness did not impact his ability to understand what was happening during the guilty plea hearing. He further testified that he was not under the influence of any prescription drugs that impacted his ability to understand what was going on during the hearing.[1]

---

[1] The transcript indicates that Defendant nodded his head instead of providing a verbal response regarding whether he was under the influence of any prescription drugs. The PCRA Court noted that it was always his practice to follow up with additional questions whenever a Defendant responded that he was taking prescription medications. Because the court did not ask any follow-up questions after Defendant nodded his head, the PCRA Court found that

-2-

Additionally, Defendant's attorney, Ms. Christlieb, stated that she spoke with Defendant's social worker who had no concerns regarding Defendant's competency.

During the guilty plea hearing, Defendant also acknowledged that he was waiving important trial rights, including: (1) a unanimous verdict, (2) participating in jury selection with his attorney, (3) the burden of proof required to support a guilty verdict, and (4) the right to cross-examine any witnesses. Defendant further acknowledged that he was not threatened or forced into pleading guilty, and that no one promised him anything in exchange for pleading guilty and giving up his right to a trial. In addition to Defendant's oral guilty plea colloquy, Defendant acknowledged that he signed the guilty plea forms by stating, "I just signed it, but I understand what is going on." When the trial court asked Defendant, "what does the form say," he responded that he "didn't read it." The trial court then allowed Defendant to read the written guilty plea form.

Also during the guilty plea hearing, the prosecutor provided a factual summary of the testimony and other evidence that would have been presented at trial and which supported the criminal convictions. After the factual summary, the trial court asked Defendant if he agreed with the factual summary. Defendant responded, "To a point." He then denied having sex with Williams, but "was willing to go forward because I plead guilty." Given Defendant's reluctance to admit that the factual summary was correct, the trial court suggested to proceed by way of a *nolo contendere* plea. During an extensive colloquy with Defendant regarding the *nolo contendere* plea, Defendant admitted that he had sex with Williams but denied that she said "no" to having sex with him. N.T. 12/05/2012 at 23-24. The trial court interpreted Defendant's response as raising the issue of consent as a defense to the criminal charges.

---

Defendant nodded his head to indicate "no" and that he was not under the influence of any prescription medication. N.T. 02/18/2015 at 12.

-3-

The trial court specifically inquired of Defendant: "Do you desire to plead guilty to those facts, do you desire to take this case to trial and assert your innocence?" Defendant responded by saying, "I wish I could, but no, sir." The trial court again specifically inquired of Defendant, "So do you wish to take this trial, knowing that you believe that you have some defense to the case?" Defendant responded, *inter alia*, "Yeah. I had a defense, but it is not what I want." Once again, the trial court specifically inquired, "I'm not understanding what your response is." Defendant replied, "My response is, I can go to trial, but I won't take it to trial." Finally, the trial court inquired, "You want to plead guilty," to which Defendant responded, "Yes, sir. I would."

As a result of this extensive colloquy, the trial court determined that Defendant knew that he had a defense to the criminal charges but voluntarily chose to plead guilty. The trial court accepted his plea as an *Alford* plea, whereby Defendant was aware that he had a defense of consent by Williams, but decided to plead guilty. Defendant was notified that he had a defense if he chose to go to trial, and Defendant responded, "I won't take it to trial."

3. Defendant's Sentencing Hearing

At the sentencing hearing, the trial court asked Defendant if he wanted to exercise his right of allocution prior to being sentenced. Defendant responded,

> I would like to say, I think I will say something. I am a God child and so what I would ask this Court for mercy from the Court. Maybe I don't deserve to be here, maybe I do, I just don't know, I didn't do it, I didn't do that. With all my heart I never, never would never force my girlfriend, I would never do that, I'm just asking for mercy. I just want you to take mercy on me because I want to be a God child.

N.T. 03/08/2013 at 11-12. In response to this statement, the trial court inquired Defendant if he "agree[d] that you plead[ed] guilty and acknowledged the facts that support the two convictions

-4-

to which you plead[ed] guilty to." Defendant responded, "Yes, Sir, I do." Based upon his response, the trial court then sentenced Defendant.

### 4.    Defendant's PCRA Hearing

On February 18, 2015, the PCRA Court held a hearing and reviewed Defendant's statements made during the guilty plea hearing. The PCRA Court determined that during the guilty plea hearing Defendant understood that: (1) he was pleading guilty; and (2) he had a right to a trial where he could present a defense, including the defense of consent by Williams. The PCRA Court cited Defendant's *Alford* plea as evidence that Defendant was aware of an available defense of consent, but instead chose to plead guilty rather than go to trial.

The PCRA Court also determined that Defendant's testimony during the guilty plea hearing was coherent and responsive during the extensive colloquy with the trial court. It further noted that his testimony and responses were not consistent with a person suffering from a mental illness or who failed to take required medication. Rather, it was consistent with a person who knowingly and voluntarily pleaded guilty. Last, the PCRA court cited the testimony of the Defendant's social worker, who informed Defendant's attorney that he had no concerns about Defendant's mental health status or competency. N.T. 02/18/2015 at 11-14.

### DISCUSSION

In *Commonwealth v. Cox*, 983 A.2d 666 (Pa. 2009), our Supreme Court set forth the standards governing claims brought pursuant to the PCRA alleging ineffective assistance of counsel:

> Under the PCRA, collateral relief is afforded to individuals who prove that they are innocent of the crimes of which they were convicted, and those receiving illegal sentences. 42 Pa.C.S. § 9542. "A petitioner is eligible for PCRA relief only when he proves by a preponderance of the evidence that his conviction or sentence resulted from one or more of the circumstances delineated in 42

Pa.C.S. § 9543(a)(2)." *Commonwealth v. Natividad*, 938 A.2d 310, 320 (Pa. 2007). One of the grounds enumerated in 42 Pa.C.S § 9542(a)(2) involves claims alleging ineffective assistance of counsel. Thus, the PCRA provides relief to those individuals whose convictions or sentences "resulted from ineffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9542(a)(2)(ii). This Court has interpreted this to mean that in order to obtain relief on a claim alleging ineffective assistance of counsel, a petitioner must prove that: (1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner. *Commonwealth v. Collins*, 957 A.2d 237 (Pa. 2008); *Commonwealth v. Pierce*, 527 A.2d 973 (Pa. 1987). A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (quoting *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998)). "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Finally, the law presumes that counsel was effective and the burden of proving that this presumption is false rests with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 n.10 (Pa. 2000).

*Commonwealth v. Cox*, 983 A.2d at 678.

The standard of review for an appeal from the denial of PCRA relief is "whether the findings of the PCRA court are supported by the record and free of legal error." *Commonwealth v. Gwynn*, 943 A.2d 940, 944 (Pa. 2008). "The level of deference accorded to the post-conviction court may vary depending upon whether the decision involved matters of credibility or matters of applying the governing law to the facts as so determined." *Commonwealth v. Williams*, 950 A.2d

-6-

294, 299 (Pa. 2008). "The PCRA court's factual determinations are entitled to deference, but its legal conclusions are subject to plenary review." *Commonwealth v. Gorby*, 900 A.2d 346, 363 (Pa. 2006).

A judge may dismiss a PCRA petition without a hearing if: (1) the petition is patently frivolous and without support in the record; or (2) the facts alleged therein would not, even if proven, entitle the defendant to relief. *See* Pa.R.Crim.P. 907; *Commonwealth v. Walls*, 993 A.2d 289, 295 (Pa. Super. Ct. 2010) (stating, "It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence."). "There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. Ct. 2008).

Here, Defendant's PCRA petition was dismissed without an evidentiary hearing because his claims lacked merit and were not supported in the record. For the reasons stated below, the appellate court should affirm the PCRA court's dismissal of Defendant's petition without an evidentiary hearing.

1.      The Post-Conviction Court Properly Dismissed Defendant's
        Petition Without An Evidentiary Hearing Because
        Defendant's Guilty Plea Was Knowing And Voluntary

On appeal, Defendant claims that he was "unable to knowingly and voluntarily enter a plea because at the time he was not taking his medication and was suffering from the effects of his mental illness" and that his counsel was ineffective for "failing to ensure that [his] plea was knowing and voluntary." *See* 1925 Statement of Errors at 1 (Issues 1-3). The Pennsylvania

-7-

Supreme Court recently set out the following standard for evaluating whether a guilty plea is knowing and voluntary:

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Commonwealth v. Eichinger*, 108 A.3d 821, 832 (Pa. 2014).

For all of the reasons previously discussed *supra* at 2-4, Defendant's guilty plea affirmatively showed that he understood the consequences and voluntarily decided to enter the plea of guilty. Defendant knew the reason for being in attendance, stating, "We're here to sentence me, sir." Defendant acknowledged the consequences of his guilty plea, stating, "I know" when informed that he could be incarcerated for up to 22 years. Additionally, Defendant was aware that he had the right to a jury trial and defense. Instead, he responded, "I won't take it to trial." Defendant stated, "No" when asked if anybody forced him to waive his right to a trial, showing Defendant's voluntary decision. Not only did the Defendant orally plead guilty, but Defendant also read the guilty plea form, reviewed it with the advice and assistance of counsel, and ultimately signed the guilty plea form. Lastly, Defendant stated, "No, sir" when asked if his mental health treatment or diagnosis would affect his ability to understand. Defendant's social worker confirmed Defendant's statements by telling his defense attorney that he had no concerns about Defendant's competency.

Additionally, the trial court had the opportunity to observe and evaluate Defendant's behavior during the guilty plea hearing on December 5, 2012. At that hearing, Defendant

coherently answered all questions. In addition, Defendant read and signed the guilty plea form. Defendant acknowledged the reason for being in attendance, stating, "We're here to sentence me, sir." Furthermore, when specifically asked whether or not his mental health treatment or diagnosis would affect his ability to understand, Defendant replied, "No, sir." Defendant's own social worker had no concerns about Defendant's capacity to comprehend his situation or the proceedings. Defendant's counsel believed that he was competent to understand his situation and the proceedings. Counsel never requested a mental health evaluation and never expressed any concerns about Defendant's competency. During Defendant's PCRA hearing, the trial court noted that Defendant's behavior during his guilty plea hearing was inconsistent with a person suffering from a mental illness.

Defendant is bound by the written guilty plea agreement, the oral colloquy, and the facts to which he pleaded guilty. Defendant may not assert grounds for withdrawing the plea that contradict his previous statements during the guilty plea hearing. *See Commonwealth v. Willis*, 68 A.3d 997 (Pa. Super. Ct. 2013) (concluding that the PCRA court correctly rejected petitioner's ineffectiveness claims where the claims would contradict petitioner's statements at the guilty plea colloquy, noting that the defendant was bound by those statements made in open court while under oath."). As a result, it was reasonable for the PCRA court to determine that Defendant knowingly and voluntarily pleaded guilty. Thus, Defendant failed to meet his burden of proof, and this claim is meritless.

2.     The Post-Conviction Court Properly Dismissed Defendant's
Petition Without An Evidentiary Hearing Because Defendant's
Alleged Insanity Defense Is Meritless And Without Support

On appeal, Defendant also claims that his counsel was ineffective "for failing to explore the possibility of having him examined to determine whether he was competent to stand trial and whether an insanity defense could be pursued." *See* 1925 Statement at 1-2 (Issues 4-6). There is no abuse of discretion in a trial court's decision not to order a competency evaluation of a defendant where the judge had ample opportunity to observe defendant and where the defendant testified. *Commonwealth v. Petterson*, 49 A.3d 903, 915 (Pa. Super. Ct. 2012). An abuse of discretion occurs where the trial court reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will. *Commonwealth v. Cascardo*, 981 A.2d 245, 248 (Pa. Super. Ct. 2009).

The trial court did not abuse its discretion by not ordering a competency evaluation. For all of the reasons discussed in the previous section, *supra* at 7-9, Defendant's insanity claim is without merit and the trial court did not abuse its discretion because nothing during any of the hearings indicated that defendant required a competency evaluation. *See Commonwealth v. Petterson*, 49 A.3d 903, 915 (Pa. Super. Ct. 2012) (rejecting abuse of discretion claim where trial court refused defense counsel's post-trial but pre-sentence request for a mental health evaluation where trial court observed defendant's demeanor throughout the trial and nothing of record indicated a need for such an evaluation).

3.    The Post-Conviction Court Properly Dismissed Defendant's Petition
Without An Evidentiary Hearing Because Defendant Was Aware Of
An Available Consent Defense But Decided To Plead Guilty Nevertheless

Defendant also claims that his counsel was ineffective "for failing to inform [him] that he had a viable consent defense." *See* 1925 Statement at 2 (Issues 7 -8). Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. *Commonwealth v. Timchak*, 69 A.3d 765, 769 (Pa. Super. Ct. 2013). The law does not require that the defendant be pleased with the outcome of his decision to enter a plea of guilty. All that is required is that his decision to plead guilty be knowingly, voluntarily, and intelligently made. *Commonwealth v. Anderson*, 995 A.2d 1184, 1192 (Pa. Super. Ct. 2010).

Here, Defendant entered a guilty plea that was knowing and voluntary even though he was aware of a possible defense as discussed *supra* at 2-5. Defendant stated, "I know" when told that he would be waiving his right to a jury trial by pleading guilty. When asked if Defendant was forced into waiving his right, Defendant responded, "No." Moreover, the trial court told Defendant that he had an available consent defense if he chose to take his case to trial. *See* N.T. 12/05/2012 at 26-28 (stating "So do you wish to take this case to trial, knowing that you believe that you have some defense to this case?" and "I'll find this is the nature of an [Alford] plea, that Mr. Prophete believes he would have some defense to this case, notwithstanding[] that he is accepting responsibility and is pleading guilty to the facts that the Commonwealth has recited.") Instead, Defendant responded, "I won't take it to trial." Defendant's plea was an *Alford* plea; he recognized that he had a defense but chose to plead guilty regardless of that potential defense. Defendant acknowledged and signed the *Alford* plea. The hearing on December 5, 2012, demonstrated that Defendant knew about a possible defense and that Defendant waived that

-11-

defense by pleading guilty to the facts the Commonwealth stated. During the sentencing hearing on March 8, 2013, Defendant confirmed that he wanted to plead guilty and acknowledged that the facts stated by the prosecutor at the guilty plea hearing supported the two convictions. *See* N.T. 03/08/2013 at 11-12 (noting Defendant's response, "Yes, Sir, I do."). Therefore, Defendant's claim is without merit because he voluntarily and knowingly entered a plea of guilty notwithstanding an available defense.

4. The Post-Conviction Court Properly Dismissed Defendant's Petition Without An Evidentiary Hearing Because Defendant's After-Discovered Evidence Claim Is Meritless And Without Support

Finally, Defendant claims that previously unavailable and exculpatory letters, which undermined the complaining witness's credibility and could have made a difference at trial, constituted after-discovered evidence. *See* 1925 Statement at 2 (Issues 9-10). To obtain relief on a substantive after-discovered evidence claim based on recantation testimony, a PCRA Petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. *Commonwealth v. Brown*, 111 A.3d 171 (Pa. Super. Ct. 2015); *Commonwealth v. Smith*, 17 A.3d 873 (Pa. 2011). Further, the proposed new evidence must be producible and admissible. *Commonwealth v. Smith*, 17 A.3d 873, 887 (Pa. 2011).

Here, Defendant claims that several letters he received from the complaining witness were exculpatory because the complaining witness: (1) suggested the acts were consensual, and (2) stated that she brought the charges so Defendant would receive mental health counseling,

rather than bringing charges because the allegations were true. Defendant appended a copy of a single letter to his original PCRA Petition filed on March 24, 2014.[2] The letter provided:

> "Dear Boby"
> Wht's up?
>
> I went to visit you today on August 21, 2013 when I got to the prision them refused my visit because of the case against you. I had a van service to pick me up from broad st. I was so upset and crying because I was'nt able to see you. The prisioner guard told me to write to Superintendent that everything is resolved between us so that they can put me back on your visiting list. It takes about 2-3 weeks for approval if granted. I will be coming to visit you soon. If you want to see me. I miss and I love you so much I regret everything that happen to you. It's so hard to write you sometimes because I want to talk with you on the phone and express how I feel about you. Stay incourage
> Write back!
>
> "Love"
> Michelle

Defendant also appended a photograph in a supplement to his second amended petition, filed on February 19, 2015. The photograph, allegedly of the complaining witness, had a handwritten note on the back: "To: Boby, From: Michelle, "To the one I love" "Keep your head up" Love, your boo."

Based on this letter and photograph with a handwritten note, the PCRA court concluded that the letter simply expressed some form of regret regarding the consequences of the proceedings against Defendant, showed that the complaining witness cared for Defendant, and showed that the complaining witness felt bad. The letter was not relevant and not authenticated, so Defendant failed to demonstrated that the letters were producible and admissible at trial. More importantly, the PCRA court determined that the letters were not exculpatory in any way, did not

---

[2] Although Defendant indicated that he received multiple letters from the complaining witness, only a letter and a photograph with a handwritten note were produced throughout the PCRA proceedings. The PCRA court provided counsel the right to supplement the record with additional letters, however, Defendant never took advantage of this opportunity and failed to submit any other evidence relevant to this issue.

-13-

contradict the charges against him or address the issue of consent, and did not indicate that she was recanting her testimony or expressing any thoughts about the truth of the underlying facts supporting Defendant's conviction. Moreover, such evidence was cumulative of the victim's cross-examination at trial, and was not likely to compel a different result if a new trial were granted. *See Commonwealth v. Smith*, 17 A.3d 873 (Pa. 2011) (rejecting after-discovered evidence claim where witness to defendant's shooting submitted post-trial affidavit allegedly recanting her trial testimony because: (1) the affidavit was cumulative of her cross-examination testimony, and (2) it was not likely to compel a different result because the jury was already aware of her inconsistent statements); and *Commonwealth v. Wilson*, 649 A.2d 435 (Pa. 1994) (rejecting after-discovered evidence claim where petitioner appended an unsworn, handwritten statement of Commonwealth witness to his brief recanting trial testimony because: (1) petitioner failed to show that such evidence could not have been obtained at or before the conclusion of trial, (2) such recantation evidence was not of a nature and character that would likely result in a different verdict if a new trial were granted, and (3) "there is no less reliable form of proof than recantation, especially when it involves an admission of perjury.").

Therefore, Defendant's claim lacked merit and the trial court did not abuse its discretion by dismissing Defendant's after-discovered evidence claim.

CONCLUSION

Based on the foregoing, this court should affirm the PCRA court's dismissal of Defendant's amended petition for relief under the PCRA.

BY THE COURT:

_____
DANIEL J. ANDERS, JUDGE
Dated: September 8, 2015

-14-