J-S76005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| GLENN HANSEN | : | |
| | : | No. 2366 EDA 2015 |
| Appellant | : | |

Appeal from the PCRA Order July 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009484-2007

BEFORE:   PANELLA, J., STABILE, J., and PLATT*, J.

MEMORANDUM BY PANELLA, J.                    **FILED APRIL 24, 2018**

Glenn Hansen appeals from the order dismissing his petition pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, without a hearing. Appellant alleges he was entitled to an evidentiary hearing, and ultimately a new trial, due to trial counsel's ineffectiveness during his jury trial. We affirm.

For a recitation of the complete factual background and procedural history of this case, we direct the interested reader to the memorandum decision written by a prior panel of this Court in response to Appellant's direct appeal. **See Commonwealth v. Hansen**, No. 2949 EDA 2011 at 1-3 (Pa. Super., filed February 7, 2013) (unpublished memorandum).

Briefly, in May 2005, Appellant's girlfriend, Taneke Daniels, disappeared. Approximately a year later, construction workers at Brendan

_____
* Retired Senior Judge assigned to the Superior Court.

Byrne State Park in Burlington County, New Jersey, discovered a decomposing body wrapped in a tarp and buried in a shallow grave. The authorities positively identified the body as Daniels. The New Jersey State Police contacted Appellant to set up an interview. After receiving his *Miranda*[1] warnings, Appellant informed New Jersey State Police Detective Bryant Hoar that he had not left his Philadelphia apartment the day Daniels went missing. Further, he denied ever having visited a New Jersey state park. When Detective Hoar confronted Appellant with cell phone records that disputed his statement, Appellant stopped responding to questions and looked down briefly before his attorney ended the interview.

The police also conducted several interviews with Appellant's sister, Kelly Hansen. While Ms. Hansen initially admitted to varying degrees of knowledge surrounding Daniels's disappearance, she ultimately informed the police that Appellant had confessed to smothering Daniels and burying her in the park. Following Ms. Hansen's statement, the police arrested Appellant and charged him with first-degree murder and abuse of corpse.[2]

Appellant proceeded to jury trial. At trial, the Commonwealth presented, in part, the testimony of Detective Hoar, Ms. Hansen, and the medical examiner, Dr. Ian Hood. Dr. Hood testified that although the decomposition of Daniels's body made it difficult to discern a cause of death, suffocation was

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] 18 Pa.C.S.A. §§ 2502(a) and 5510, respectively.

a potential cause of death. Appellant presented the testimony of Dr. Paul Hoyer, a forensic pathologist, who opined that Daniels could have died of a drug overdose. Appellant did not testify on his own behalf.

Following the close of evidence, the jury convicted Appellant of first-degree murder and abuse of corpse. The following day, the trial court imposed a sentence of life imprisonment. Appellant filed an appeal to this Court, and we affirmed his judgment of sentence. Our Supreme Court denied Appellant's petition for allowance of appeal.

Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel who later filed an amended petition. The PCRA court issued notice of its intent to dismiss Appellant's petition without a hearing, and ultimately dismissed the petition. This timely appeal follows.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." **Commonwealth v. Edmiston**, 65 A.3d 339, 345 (Pa. 2013) (citation omitted). On questions of law, our scope of review is *de novo*. **See id**.

"The right to an evidentiary hearing on a post-conviction petition is not absolute." **Commonwealth v. Walls**, 993 A.2d 289, 295 (Pa. Super. 2010) (citations and brackets omitted). Instead, a PCRA court may decline to hold a hearing where it can determine, from the record, that there are no genuine issues of material fact. **See Commonwealth v. Jones**, 942 A.2d 903, 906 (Pa. Super. 2008). "With respect to the PCRA court's decision to deny a

request for an evidentiary hearing … such a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." ***Commonwealth v. Mason***, 130 A.3d 601, 617 (Pa. 2015) (citation omitted).

All of Appellant's issues on appeal assert the ineffective assistance of trial counsel. We presume counsel provided effective assistance; Appellant has the burden of proving otherwise. ***See Commonwealth v. Pond***, 846 A.2d 699, 708 (Pa. Super. 2004). "In order for [an a]ppellant to prevail on a claim of ineffective assistance of counsel, he must show, by a preponderance of the evidence, ineffective assistance of counsel which … so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." ***Commonwealth v. Johnson***, 868 A.2d 1278, 1281 (Pa. Super. 2005) (citation omitted). Further,

> [an a]ppellant must plead and prove by a preponderance of the evidence that: (1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) [a]ppellant suffered prejudice because of counsel's action or inaction.

***Commonwealth v. Spotz***, 18 A.3d 244, 260 (Pa. 2011) (citations omitted). A failure to satisfy any prong of the test will require rejection of the entire claim. ***See Commonwealth v. Spotz***, 84 A.3d 294, 311 (Pa. 2014).

"Arguable merit exists when the factual statements are accurate and could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." ***Commonwealth v. Barnett***, 121 A.3d 534, 540 (Pa. Super. 2015) (citations and internal quotation marks omitted). "Prejudice is established if there is a reasonable probability that, but for

counsel's errors, the result of the proceedings would have been different. A reasonable probability is probability sufficient to undermine confidence in the outcome." **Commonwealth v. Stewart**, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*) (citations and internal quotation marks omitted).

Appellant's first issue concerns trial counsel's failure to introduce specific bias evidence against the Commonwealth's main witness, his sister, Ms. Hansen: that Ms. Hansen may be biased against Appellant because he had been convicted of raping her in 1993. As Ms. Hansen was the Commonwealth's main witness, Appellant maintains it is reasonable to conclude that if she had been impeached with this particular bias against Appellant, the jury would have doubted her veracity and acquitted Appellant. As such, Appellant argues that trial counsel's failure to impeach Ms. Hansen with this evidence resulted in prejudice.

A criminal defendant has the right to cross-examine a witness "as to any matter tending to show the interest or bias of that witness." **Commonwealth v. Hyland**, 875 A.2d 1175, 1186 (Pa. Super. 2005) (citation omitted). This allows a defendant to test a "witness'[s] story, to impeach credibility, and to establish the witness'[s] motive for testifying." **Id**. (citation omitted). As revealing bias through cross-examination is an important duty of a defense attorney, "[a] failure to [] impeach a key witness is considered ineffectiveness in the absence of a reasonable strategic basis for not impeaching."

*Commonwealth v. Small*, 980 A.2d 549, 565 (Pa. 2009) (citation omitted).[3]
However, trial counsel will not be deemed ineffective for failing to impeach a
witness in a particular way, where counsel has sufficiently impeached a
witness by other means. *See Commonwealth v. Solano*, 129 A.3d 1156,
1175 (Pa. 2015); *Commonwealth v. Dennis*, 715 A.2d 404, 408-409 (Pa.
1998).

We agree with the PCRA court that Appellant is not entitled to relief on
this claim. Defense counsel spent a significant amount of time during his
closing argument highlighting problems with Ms. Hansen's testimony—on
matters ranging from the inconsistencies in her statements to her self-
interested testimony in the face of her promise of immunity from the
Commonwealth. *See* N.T., Trial, 5/23/11, at 51-60.

Additionally, even if this proposed impeachment would have caused the
jury to disbelieve Ms. Hansen's testimony in its entirety, the Commonwealth
presented significant circumstantial evidence of Appellant's guilt including:
Appellant's impending trial for assaulting Daniels, *see* N.T., Trial, 5/18/11, at
54, 65-71; Benita Dixon's testimony that Appellant offered Daniels money to
keep her from testifying against him at that trial, *see* N.T. Trial, 5/19/11, at

---

[3] "[T]he court is not to glean, surmise, or speculate with regard to the strategy
of counsel except in those rare instances where his strategy is clear and
obvious from the record under review." *Commonwealth v. McGill*, 832 A.2d
1014, 1023 (Pa. 2003). Perhaps that is not the case here, but it seems
possible, as the Commonwealth posits, that "the self-immolating effect of the
rape revelation would have made his murder conviction more likely, not less
likely." Commonwealth's Brief, at 10.

10-11; Appellant's cell phone records placing him at Daniels' apartment the day she went missing, **see** i**id**., at 170-178; Helymah Barry's and Kareemah Zyad's testimony that Appellant was the last person seen with Daniels, **see** N.T., Trial, 5/18/11, at 84-94; Appellant's false story to the police about a stranger in a white SUV, **see id**., at 166-173; and Appellant's attempts to convince Daniels' family that Daniels was still alive a month after her disappearance by pretending to have received a voicemail message from her, **see id**., at 98-104. **See also Hansen**, No. 2949 EDA 2011 at 3-5.

In short, we find Appellant has failed to establish a "reasonable probability that, but for counsel's errors, the result of the proceedings would have been different." **Stewart**, 84 A.3d at (citations and internal quotation marks omitted). Appellant's first ineffectiveness claim fails on the prejudice prong.

Next, Appellant claims trial counsel was ineffective for failing to object to Detective Hoar's statement that, when confronted with inconsistencies in his statement during a pre-arrest interview, Appellant looked down and stopped answering questions, causing his attorney to end the interview. Appellant alleges this testimony violated his right against self-incrimination afforded to him by both the United States and Pennsylvania Constitutions, and relies on this Court's decision in **Commonwealth v. Molina**, 33 A.3d 51 (Pa. Super. 2011), to support his claim. As this testimony violated his rights, Appellant argues he was innately prejudiced.

"Both the Fifth Amendment of the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution protect an individual's right not to be compelled to be a witness against himself." **Commonwealth v. Adams**, 39 A.3d 310, 316 (citation omitted). Following precedent set forth by the United States Supreme Court, our Supreme Court has long held that this right precludes the government from using a post-arrest silence of a non-testifying defendant as substantive evidence of consciousness of guilt. **See Commonwealth v. Clark**, 626 A.2d 154, 156 (Pa. 1993).

Subsequently, in **Molina**, an *en banc* panel of this Court extended this rule to pre-arrest statements, holding "the Commonwealth cannot use a non-testifying defendant's pre-arrest silence to support its contention that the defendant is guilty of the crime charged as such use infringes on a defendant's right to be free from self-incrimination." 33 A.3d at 62 (citations omitted). However, the *en banc* panel clearly expressed that this finding "does not impose a *prima facie* bar against any mention of a defendant's silence; rather, we guard against the exploitation of appellant's right to remain silent by the prosecution." **Id**., at 63 (citation omitted).

Appellant's reliance on **Molina** is misplaced. The Commonwealth, through Detective Hoar, did not offer the evidence of Appellant's pre-arrest silence as substantive evidence of his guilt. Instead, Detective Hoar described Appellant's behavior when confronted with inconsistencies as a way of explaining how his interview with Appellant ended. As **Molina** bars references to a defendant's pre-arrest silence *only* where it is used to support an

inference of a defendant's guilt, we do not find that **Molina** applies to the case at hand.

Thus, we find Detective Hoar's reference to Appellant's pre-arrest silence did not violate his constitutional rights. Because Appellant cannot establish his underlying claim has merit, he has failed to argue successfully counsel's ineffective assistance with regard to this claim. **See Commonwealth v. Jones**, 912 A.2d 268, 278 (Pa. 2006) ("Counsel will not be deemed ineffective for failing to raise a meritless claim.")

Further, we fail to see how he was prejudiced. The Commonwealth's reference to Appellant's pre-arrest silence was fleeting. After Detective Hoar testified that Appellant's non-compliance ended his interview, the Commonwealth did not refer to Appellant's interview silence, either explicitly or implicitly, again. Our Supreme Court has found that "[e]ven an explicit reference to silence is not reversible error where it occurs in a context not likely to suggest to the jury that silence is the equivalent of a tacit admission of guilt." **Commonwealth v. DiNocola**, 866 A.2d 329, 337 (Pa. 2005) (citation and parentheses omitted).

Finally, Appellant claims trial counsel was ineffective for failing to object to the opinion testimony of Dr. Hood, the Commonwealth's forensic pathologist. Appellant contends Dr. Hood exceeded the scope of his expertise, forensic pathology, when he testified that "in 20 years of reviewing many hundreds of 'drug dumps,' [i.e., where a drug overdose victim had been transported and buried after their death] he had only experienced one case

where an individual went to the extreme to transport a body miles away, dig a shallow grave and bury the body." Appellant's Brief, at 25. Appellant contends this opinion improperly exceeded the scope of his expertise and was innately prejudicial. "[T]he standard for qualifying an expert witness is a liberal one: the witness need only have a reasonable pretension to specialized knowledge on a subject for which expert testimony is admissible." *Commonwealth v. Doyen*, 848 A.2d 1007, 1014 (Pa. Super. 2004) (citation omitted). While this specialized knowledge must be "based on training and experience[,] formal education on the subject matter is not necessarily required*." Commonwealth v. Copenhefer*, 719 A.2d 242, 255 (Pa. 1998). Further, our courts have routinely qualified medical examiners as expert witnesses, and have found that as long as their testimony is based on experience, their testimony is not automatically limited to the medical cause and manner of death. *See Commonwealth v. Mollett*, 5 A.3d 291, 305 (Pa. Super. 2010) (finding medical examiner could rely on experience when opining about the position of the shooting victim and the timing of gunshots).

Initially, we note Appellant has provided no authority to support his claim that this opinion was beyond the scope of Dr. Hood's area of expertise. In any event, after reviewing the qualifications of the medical examiner, together with the evidence of record, we conclude this testimony was not outside the scope of Dr. Hood's expertise.

Dr. Hood, while formally qualified as a forensic pathologist, testified during *voir dire* that he served as a medical examiner in both Philadelphia and

New Jersey for over 20 years. *See* N.T., Trial. 5/20/11, at 26-29. As part of his duty as a medical examiner, Dr. Hood explained he was responsible for investigating the circumstances surrounding an unnatural death. *See id*., at 26.

Based upon this specialized knowledge as a medical examiner, and his vast experience with cases involving "drug dumps," Dr. Hood stated he had never seen such a case in Philadelphia. Instead Dr. Hood opined that most drug overdose victims in Philadelphia are "simply left in place if it's in a drug house or they are just dragged out to the next – the nearest vacant lot and left there." *Id*., at 70. Importantly, Dr. Hood did not rule out the possibility that Daniels died from a drug overdose, but simply opined that a drug overdose victim in Philadelphia is more likely to be found close to their place of death. *See id*., at 69-71.

Accordingly, as the evidence of record justified the limited opinion of the medical examiner, this claim is meritless and counsel cannot be found ineffective. *See Commonwealth v. Blount*, 647 A.2d 199, 204-205 (Pa. 1994) (holding trial counsel cannot be held ineffective in failing to object to a medical examiner's expert testimony where the testimony was fairly within the scope of the medical examiner's expertise).

The PCRA court committed no error in dismissing the petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/24/18