J-S48025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| I. DEAN FULTON | : | |
| | : | |
| Appellant | : | No. 3614 EDA 2017 |

Appeal from the PCRA Order November 2, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0007871-2013

BEFORE:   DUBOW, J., MURRAY, J., and PLATT*, J.

MEMORANDUM BY MURRAY, J.:                **FILED AUGUST 30, 2018**

I. Dean Fulton (Appellant) appeals from the order dismissing his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546.  We affirm.

The facts underlying this appeal stem from a January 24, 2010 incident during which Appellant shot Dominique Jenkins (Jenkins) in the head, killing him, and Lamar Henderson in the leg and buttock, seriously injuring him.

> Henderson testified that [Jenkins] wanted to purchase a gun, and that [Jenkins] ultimately purchased a small, silver gun from [Appellant] for $200.00.  Approximately one week prior to the shooting, [Appellant] asked [Jenkins] if he could borrow the gun back.  [Jenkins] agreed.  [Appellant] gave [Jenkins] a small black and gold gun as "collateral" and an extra $40.00 for allowing him to borrow the gun since [Jenkins] had just purchased it from [Appellant].
>
> On the day of the shooting, [Appellant] called [Jenkins] and told him to meet him on 62nd Street and Buist Avenue to exchange the guns.   Henderson testified that [Appellant], Steven Jordan,

_____

* Retired Senior Judge assigned to the Superior Court.

[Jenkins], and he met on the corner, exchanged handshakes, and walked to 62nd Street and Chelwynde Avenue.

Henderson testified that [Appellant] and [Jenkins] were standing close to each other, face-to-face – [Appellant] was facing 63rd Street, [while Jenkins] was facing 62nd Street. Steven Jordan was standing somewhat behind [Appellant]. Henderson testified that he was standing towards Dicks Avenue, and that he had a clear view of [Appellant], [Jenkins], and Steven Jordan.

Henderson testified: "We got to the corner of 62nd and Chelwynde. [Jenkins] had the collateral gun in his hand ready to just make the exchange. [Appellant] then pulled out the other weapon and just started shooting . . . **He shot Dom point-blank and then as I tried to get away, he shot me.**" [Appellant] was standing approximately two-and-a-half to three feet away from [Jenkins] when he shot him in the forehead. Henderson testified that [Jenkins] immediately fell against the car that he was standing next to after [Appellant] shot him. He also testified that [Appellant] was still shooting at him (Henderson) as he tried to run away.

***Commonwealth v. Fulton***, -- A.3d --, 2016 WL 2349178, at *4-5 (Pa. Super. 2016) (unpublished memorandum) (internal citations omitted; emphasis in original).

Following a jury trial, Appellant was convicted of one count each of possession of an instrument of crime, aggravated assault, firearms not to be carried without a license, and carrying a firearm on a public street in Philadelphia.[1] On February 11, 2015, Appellant was sentenced to an aggregate term of 9 to 18 years in prison. On February 17, 2015, Appellant filed a post-sentence motion, which the trial court denied without hearing. On

---

[1] 18 Pa.C.S.A. §§ 907, 2702, 6106, and 6108. Appellant was acquitted on the charges of murder, 18 Pa.C.S.A. § 2502, and conspiracy to commit murder, 18 Pa.C.S.A. § 903, in connection with the death of Jenkins.

- 2 -

March 16, 2015, Appellant filed a direct appeal with this Court. This Court affirmed Appellant's judgment of sentence on May 4, 2016.

On January 31, 2017, Appellant filed a timely *pro se* PCRA petition. The PCRA court appointed counsel to represent Appellant in his PCRA proceedings. On August 16, 2017, the Commonwealth filed a motion to dismiss Appellant's PCRA petition without a hearing. Appellant filed a response to the Commonwealth's motion on August 22, 2017. On September 21, 2017, the PCRA court issued notice of its intent to dismiss Appellant's PCRA petition without a hearing pursuant to Rule 907 of the Pennsylvania Rules of Criminal Procedure. On September 10, 2017, Appellant filed a response to the PCRA court's Rule 907 notice. On November 2, 2017, the PCRA court dismissed Appellant's PCRA petition. This timely appeal followed.[2]

On appeal, Appellant presents the following issues for our review (reordered for ease of disposition):

> I. WHETHER TRIAL COUNSEL WAS CONSTITUTIONALLY INEFFECTIVE FOR FAILING TO OBJECT TO THE TRIAL COURT'S OMISSION OF A ***FOWLIN*** INSTRUCTION WHEN

---

[2] On November 27, 2017, the PCRA court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On December 19, 2017, counsel for Appellant filed a Rule 1925(b) statement. We note, however, that Appellant's "concise" statement is anything but concise. Appellant takes 18 pages to complain of the PCRA court's order denying his petition without a hearing, listing 5 issues as to why this order was in error. Arguably, Appellant has waived all issues on appeal given the statement's length, breadth and complexity. ***See*** Pa.R.A.P. 1925(b)(4)(iv). In the interest of justice, however, we decline to find waiver, but caution counsel to comply with our Rules of Appellate Procedure in all future filings.

THE TRIAL RECORD WAS SUFFICIENT TO SUPPORT THE INSTRUCTION AND THE FAILURE TO OBJECT TO ITS OMISSION DEPRIVED [APPELLANT] OF THE SIXTH AMENDMENT RIGHT TO A TRIAL BY JURY ON THE CHARGE OF AGGRAVATED ASSAULT AND WAIVED THE RIGHT TO HAVE THE APPELLATE COURT DECIDE WHETHER IT WAS LEGAL ERROR FOR THE TRIAL COURT TO OMIT THE *FOWLIN* INSTRUCTION?

II. WHETHER THE PCRA COURT DENIED THE SIXTH AMENDMENT RIGHT TO A JURY TRIAL AND THE FOURTEENTH AMENDMENT RIGHT TO SUBSTANTIVE AND PROCEDURAL DUE PROCESS AND SIMILAR RIGHTS PROTECTED BY THE STATE CONSTITUTION WHEN SHE MANUFACTURED FINDINGS OF FACT PATENTLY CONTRARY TO THE TRIAL RECORD AND, IN ANY EVENT, WITHIN THE EXCLUSIVE PROVINCE OF A PROPERLY INSTRUCTED JURY?

III. WHETHER THE PCRA COURT ERRED AND DENIED PROCEDURAL DUE PROCESS WHEN SHE DENIED THE CLAIMS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WITHOUT HOLDING AN EVIDENTIARY HEARING?

Appellant's Brief at 2-3.

"In reviewing the denial of PCRA relief, we examine whether the PCRA court's determination is supported by the record and free of legal error." ***Commonwealth v. Fears***, 86 A.3d 795, 803 (Pa. 2014) (quotations and citations omitted). "To be entitled to PCRA relief, [an] appellant must establish, by a preponderance of the evidence, his conviction or sentence resulted from one or more of the enumerated errors in 42 Pa.C.S.[A.] § 9543(a)(2)[.]" ***Id.***

In deciding ineffective assistance of counsel claims, we begin with the presumption that counsel rendered effective assistance. ***Commonwealth v. Bomar***, 104 A.3d 1179, 1188 (Pa. 2014). To overcome that presumption,

the petitioner must establish: "(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different." *Id.* (citation omitted). If an appellant fails to prove by a preponderance of the evidence any of the three prongs, the Court need not address the remaining prongs of the test. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004).

In his first two issues, Appellant argues that the PCRA court erred in concluding that trial counsel was not ineffective for failing to request a jury instruction based on *Commonwealth v. Fowlin*, 710 A.2d 1130 (Pa. 1998).[3] Appellant argues the evidence reveals he shot Henderson, who was a

_____

[3] In *Fowlin*, the defendant was accosted by three men who assaulted him with pepper spray and simultaneously drew a handgun. The defendant assumed, with reason, that they intended to kill or seriously injure him. He acted instinctively and began shooting at the men, killing one of his attackers. While defending himself, however, the defendant also shot and injured an innocent bystander. Our Supreme Court held:

> Because the crimes with which Fowlin was charged[, reckless endangerment and aggravated assault,] require proof of recklessness, and because . . . a claim of self-defense, if believed, negates any element of recklessness, Fowlin, *a fortiori*, cannot be found to have been reckless [in injuring the innocent bystander], for the Commonwealth admits that his actions were justified. If he cannot be held to have been reckless, he cannot be convicted of aggravated assault or reckless endangerment. . . .

*Fowlin*, 710 A.2d at 1133.

bystander, in the course of shooting Jenkins in self-defense, and thus, he was prejudiced by trial counsel's failure to raise a justification defense.

Appellant was convicted of aggravated assault under 18 Pa.C.S.A. § 2702(a)(1), which provides, in relevant part:

**§ 2702. Aggravated assault**

**(a) Offense defined.** – A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).

In Pennsylvania, the right to use deadly force in self-protection is strictly delimited by statute:

**§ 505. Use of force in self-protection**

* * *

**(b) Limitations on justifying necessity for use of force. –**

* * *

(2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating,

except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S.A. § 505(b)(2).

In rejecting his ineffective assistance of counsel claim, the PCRA court concluded that Appellant's claim was without arguable merit. The court explained:

[I]n order for Counsel to be ineffective, the first prong of the test is that the issue must have merit. In the direct appeal, the [Appellant] argued that there was insufficient evidence establishing that he intentionally shot Mr. Henderson and, therefore, pursuant to ***Commonwealth v. Fowlin***, . . . [A]ppellant's argument is that the evidence revealed that he shot Mr. Henderson, who was a bystander, in the course of shooting Mr. Jenkins in self-defense and, thus, he cannot be found guilty of aggravated assault . . . .

In ***Commonwealth v. Fowlin***, an innocent bystander was struck while the defendant was acting under a reasonable belief that self-defense was necessary. In ***Fowlin***, the Court dismissed the aggravated assault charge stemming from a gunshot injury to an innocent bystander where the accused, who had simply been sitting at a bar, justifiably fired his gun multiple times at three attackers who had ambushed him, thrown him to the floor, stayed on top of him to continue the attack, maced him to near blindness and pointed a gun in his face.

In that case, the [d]efendant, fearing that he was about to be killed, . . . drew his own handgun and fired repeatedly in the direction of the attackers. Although he was nearly blinded by the pepper spray, he killed the assailant, who had drawn the gun, and wounded one of the others. However, he also wounded an innocent bystander.

As this Court found in its opinion to the Superior Court, the facts of ***Fowlin*** are readily distinguishable from the facts in this particular case.

Mr. Henderson was not an unintentionally injured third party bystander. Mr. Henderson himself testified that, quote, appellant shot [Mr. Jenkins] . . . point-blank, he was shot within a foot and Mr. Henderson was with [Mr. Jenkins]. They approached together and then, as I tried to get away, he shot me. Mr. Henderson was shot in the back of the right leg and left buttock.

* * *

At that particular point, the [A]ppellant wasn't defending himself against anyone. The person, who he believed caused the threat, was totally incapacitated and down. The person, Mr. Henderson, who was standing beside [Jenkins], who was never claimed to have been armed or pointed a weapon or did anything threatening, ran away . . . after the first shooting incident happened and [Jenkins] was totally incapacitated. . . .

N.T., 9/21/17, at 6-9; *see also Fulton*, 2016 WL 2349178, at *7-10.

In advancing his present appeal, Appellant essentially asks this Court to reconsider the evidence in the light most favorable to him and deem his version of the facts credible. Specifically, Appellant avers that because Henderson was standing **between** Jenkins and Appellant when he was shot, Appellant could not have shot Henderson intentionally. Appellant's Brief at 26. To support his position, Appellant points to the following exchange that occurred during Appellant's cross-examination of Henderson during trial:

[Attorney for Appellant]: A few moments ago you said you were standing between the person you are identifying as [Appellant] and the person you are saying is [Jenkins], am I right about that, sir?

[Henderson]: Yes.

N.T., 10/9/14, at 192-93; *see also* Appellant's Brief at 26.

The trial court, however, ultimately credited the testimony of Henderson over that of Appellant, explaining:

Moreover, the evidence tended to show where [Appellant], Henderson, and [Jenkins] were respectively standing at the time of the shooting . . . that [Appellant] intentionally shot Henderson. Henderson was not *literally* standing "in between" [Appellant] and [Jenkins] as defense counsel repeatedly asserts. Henderson's testimony established that [Appellant], [Jenkins], and he were essentially standing in a triangle – [Appellant] and [Jenkins] were standing close to each other, face-to-face; and Henderson was facing Dicks Avenue, permitting him to have a clear view of both [Appellant] and [Jenkins]. Based on Henderson's position, [Appellant] would have had to shoot [Jenkins] in the forehead and then re-position the firearm to his far right in order to shoot Henderson in the back of his right leg and buttock.

*Fulton*, 2016 WL 2349178, at *9 (quoting Trial Court Opinion, 8/7/15, at 11-13) (emphasis in original). Our review of the record finds ample support for the PCRA court's determination that Appellant's claim lacks arguable merit. Accordingly, because Appellant's appeal depends entirely upon an untenable argument, it provides no basis upon which to reverse the order denying PCRA relief.

Finally, Appellant argues that the PCRA court erred in dismissing his case without a hearing. This Court has explained:

[T]he right to an evidentiary hearing on a post-conviction petition is not absolute. It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

***Commonwealth v. Walls***, 993 A.2d 289, 295 (Pa. Super. 2010) (internal citations and brackets omitted). If the PCRA court "can determine without an evidentiary hearing that one of the prongs cannot be met, then no purpose would be advanced by holding an evidentiary hearing." ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008).

Appellant argues that the PCRA court was "required to hold an evidentiary hearing where, as here, the facts set forth in the PCRA petition, assumed to be true, entitle the Petitioner to the relief sought." Appellant's Brief at 13. As discussed above, the evidence Appellant would have presented in support of this claim would have been Henderson's testimony on cross-examination that was already made a part of the record. The trial court, however, credited Henderson's testimony on direct examination. As there were no genuine issues of material fact in controversy, no purpose would have been served by holding a hearing. Accordingly, the PCRA court did not err in denying Appellant's petition without a hearing.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/30/18</u>